WILLIAM H. MEAKER, as Executor, etc., Appellant *v.* NANCY A. FIERO, Impleaded, etc., Respondent.

The defense of usury must be founded on the loan or forbearance of money; if neither of these elements exist in a contract there is no usury, however unconscionable the contract may be.

In an action to foreclose a mortgage, wherein the defense was usury, sub- stantially these facts appeared: In 1883 H. executed to S., plaintiff's tes- tator, a bond and mortgage for $2,500, payable ten years from date. In 1885 H. bid in on foreclosure sale, for the benefit of defendant F., certain real estate, taking title in his own name. In 1886 S. desired H. to reduce his debt to $1,000, which H. agreed to do if S. would accept in payment $700 in money and the bond and mortgage of F. for $800, payable· in five years from date. S. desired a bonus for taking the bond and mort- gage; this H. refused to pay, but referred S. to F. The parties met; H. executed and delivered to F. a deed of the property so purchased, she executed and delivered in return her bond and mortgage on the prem- ises for $800. These, with $700 in money, H. handed to S., who refused to accept them until he received "a present." F. then paid S. fifteen dollars, and thereupon the latter accepted the securities and the money in payment of $1,500 upon the mortgage of H. *Held,* that the defense was not established; that there was no loan made by S. or forbearance on his part, but simply a change of securities for an existing·debt; and that S. could lawfully demand compensation for assenting to the transaction.

*Meaker* v. *Fiero,* (77 Hun 65), reversed.

(Argued February 5, 1895; decided February 26, 1895.)

APPEAL from judgment of the General Term of the Supreme Court in the fifth judicial department, entered upon an order made March 27, 1894, which affirmed a judgment in favor of defendant entered upon the report of a referee.

The nature of the action and the facts, so far as material, are stated in the opinion.

*John D. Teller* for appellant. The contract or agreement under and pursuant to which the mortgage in suit was given, was not a contract for the loan or forbearance of money, and it is essential to constitute usury that there be, in effect and intent, a loan or forbearance of money. (*U. D. S. Inst.* v. *Wilmot,* 94 N. Y. 22; Thomas on Mort. 633; *Spencer* v.

*Tilden,* 5 Cow. 144; *Perrine* v. *Hotchkiss,* 2 Lans. 416; *More* v. *Howland,* 1 Edw. 371; *Dunham* v. *Cudlipp,* 94 N. Y. 129; *Sickles* v. *Flanagan,* 79 id. 224; *Elwell* v. *Chamberlain,* 31 id. 611.) The taking of this fifteen dollars by Stokes was extortion if anything, and extortion is not usury. (Thomas on Mort. § 636; *Guggenheimer* v. *Griszler,* 81 N. Y. 293; *Morton* v. *Thurber,* 85 id. 550.) There is a fatal variance between the allegations of the answer and the proof. The defense alleged in the answer is unproved in its entire scope and meaning, and there is a failure of proof. (*Moore* v. *Leonard,* 20 J. & S. 13; *L. I. Bank* v. *Boynton,* 105 N. Y. 656; Code Civ. Pro. § 541.) To establish this defense and prove the transaction, out of which it is claimed the usurious agreement arose, Hoskins and his wife were produced as witnesses, and their testimony was taken under the objection of the plaintiff claiming it to be incompetent under section 829 of the Code. In this respect the referee committed an error for which the judgment should be reversed. (*Gerwig* v. *Sitterly,* 56 N. Y. 214; *Patterson* v. *Birdsall,* 64 id. 294; *Russell* v. *Nelson,* 99 id. 119; *Wallace* v. *Strauss,* 113 id. 238; *Hobart* v. *Hobart,* 62 id. 80; *Garson* v. *Green,* 1 Johns. Ch. 308; *Mears* v. *Kearney,* 1 Abb. [N. C.] 306; *Steele* v. *Ward,* 30 Hun, 555.) The evidence of Hoskins and his wife was also incompetent, for the reason that they are the persons under whom the defendant derives her interest and title within the meaning of section 829 of the Code. (*Kittle* v. *Van Dyke,* 1 Sandf. Ch. 81; *Jackson* v. *Austin,* 15 Johns. 477; *Dusenbury* v. *Hulbert,* 59 N. Y. 541; *Coutant* v. *Servoss,* 3 Barb. 128; *Cunningham* v. *Knight,* 1 id. 399; *Smith* v. *Cross,* 90 N. Y. 549; *Geissman* v. *Wolf,* 46 Hun, 289; *Foote* v. *Beecher,* 78 N. Y. 155; *Holcomb* v. *Holcomb,* 95 id. 316; *Hoffman* v. *Hoffman,* 18 id. 387.)

*F. B. Wright* for respondent. Plaintiff's contention, that although the sum of twenty-five dollars, over and above the legal rate of interest, was demanded by Stokes, the mortgagee, and fifteen dollars was actually received by him from the mort-

gagor, in excess of the legal interest and as a bonus, yet that this was not usury because, as the plaintiff alleged, it was not a loan or forbearance of money, is untenable. (Taylor on Usury, 72, 102; *Ayreel* v. *Chamberlain*, 32 Barb, 229; *Hall* v. *Ernest*, 36 id. 585; *Birdsall* v. *Patterson*, 51 N. Y. 43.) The evidence of Mr. and Mrs. Hoskins, who were sworn as witnesses for the plaintiff, was competent. (26 N. Y. 264; 36 id. 327; *Moore* v. *Oviatt*, 35 Hun, 216; *Miller* v. *Montgomery*, 78 N. Y. 282; *Hobart* v. *Hobart*, 62 id. 80; *In re Hanley*, 44 Hun, 559, 560; *Wallace* v. *Straus*, 113 N. Y. 238; *Connelly* v. *O'Connor*, 117 id. 91; *Beakes* v. *Da Cunha*, 126 id. 293–298.)

ANDREWS, Ch. J.    This action was brought for the foreclosure of a mortgage for $800, executed by the defendant, Nancy A. Fiero, to Samuel Stokes, the plaintiff's testator, dated May 28, 1886, and acknowledged May 29, 1886, to secure the payment of a bond of the mortgagor of the same date and amount in five years thereafter, with annual interest. The defense was usury. This defense was sustained by the referee before whom the action was tried, and the judgment entered upon his report has been affirmed by the General Term. The alleged usury consists in the payment by the mortgagor to the mortgagee at the time of the delivery of the bond and mortgage of the sum of $15.00.

We think the evidence failed to establish any usurious transaction, for the reason that the contract or agreement under which the bond and mortgage were given was not a contract or agreement for the loan or forbearance of money, and that the sum of $15.00 exacted by Stokes and paid by the mortgagor was exacted by Stokes as a condition of his acceptance of the bond and mortgage in question, as payment on a debt of $2,500 secured by mortgage on other property maturing in 1893, owing by one Hoskins to Stokes, and that the sum of $15.00 was paid by Mrs. Fiero in compliance with this condition.

The evidence of the transaction upon which the alleged

usury is predicated comes from witnesses on the part of the defendant.  Stokes died in 1889.  Several payments of interest were made on the mortgage prior to his death, and it does not appear that the validity of the mortgage was questioned until after that time.  It appears that in 1883 one Hoskins (the brother-in-law of Mrs. Fiero) executed to Stokes his bond and mortgage for $2,500, payable ten years after its date, and that on the 29th day of May, 1886 (the day when the bond and mortgage in question were executed), the whole principal sum of the Hoskins debt was unpaid.  In 1885 Hoskins bid in at foreclosure sale, for the benefit of Mrs. Fiero, a lot on Washington street, Auburn, taking title in his own name to secure his advance on the property.  On the 29th day of May, 1886, the situation was that Mrs. Fiero was entitled to a conveyance of the lot from Hoskins on payment to him of $800.  Hoskins, the principal witness for the defendant, testified in substance that on or about the 28th of May, 1886, Stokes came to him and desired him to state to the assessors that his debt to Stokes was only $1,000 ; that he refused to do so, whereupon Stokes informed him that he had so sworn before the assessors ; that he told Stokes he had perjured himself and that it would go hard with him " if they got on to it ; " that, after some further conversation, he told Stokes he could help him out if he would take a mortgage of $800 on the Washington street lot, and $700 in money as payment of $1,500 on the mortgage for $2,500 ; that Stokes agreed to do this, but said, " you will give me $25, the same as you promised me six months ago," and that he replied, " No, sir ; this is not for my accommodation, it is to accommodate you.  This will be a transaction between you and Mrs. Fiero, and you can make a bargain with her if you want a bonus."  Hoskins further testified that Stokes requested him to draw the papers, and they were to meet the next morning to complete the transaction.  Hoskins drew a deed from himself to Mrs. Fiero of the Washington street lot, and a bond and mortgage from her to Stokes on the same lot for $800.  The next day (29th of May) Stokes, Hoskins and Mrs. Fiero met at Hoskins' office.  The deed from Hoskins to

Mrs. Fiero of the Washington street lot, and the bond and mortgage from Mrs. Fiero to Stokes for $800 on the same lot were duly executed and acknowledged, and an indorsement was made on the mortgage held by Stokes against Hoskins of the payment of $1,500. Hoskins delivered his deed to Mrs. Fiero and passed the bond and mortgage from Mrs. Fiero to Stokes, with $700 in money, across the table to Stokes, who declined to receive them, saying, "No; I want to know something about that present," and Hoskins then said to Mrs. Fiero, "Stokes wants a bonus on this mortgage." Mrs. Fiero then approached Stokes and said, "What is it, Mr. Stokes?" and he replied, "I am always in the habit of taking a present when I take a mortgage and I want one now," and in reply to her question as to the amount, he said, "twenty-five dollars." She finally paid him $15.00, and Stokes then took the mortgage and the $700 in money. A witness (Kennedy) who was in the room and heard the conversation, a lawyer, introduces the word "loan" in the answer made by Stokes to the question of Mrs. Fiero. His statement is that Stokes said, "I must have a present in this matter. People generally make me a present when I make a loan — take a mortgage."

The foregoing is a statement of all the material facts to sustain the defense of usury. It requires a very strained and unnatural construction of the evidence to convert this transaction into a loan of money. The defense of usury must be made out as any other defense. Where the evidence is conflicting, and the evidence to sustain it justifies the inference of a usurious transaction, and the trial court has found in favor of the defendant, and the finding has been sustained by the General Term, this court cannot interfere. But it is always open here to determine whether there is any evidence to sustain a finding of fact, and the finding of a material fact, without any evidence to sustain it, is error of law. It is perhaps unnecessary to repeat what has often been said that usury may exist although the transaction does not take the direct form of a loan of money. The usurer usually seeks to conceal the usury, and to accomplish his purpose by indirect methods;

but no matter what the disguise, if the court can see that the real transaction was the loan or forbearance of money at usurious interest, its plain and imperative duty is to so declare, and to hold the security void. But where a transaction is capable of an innocent construction, and can only be held usurious by wresting it from its relation to other facts, or by imputing to the facts a sense and meaning which they cannot reasonably bear, then it is equally the plain duty of the court not to adjudge a forfeiture, but to preserve the contract and hold the parties to their respective obligations. There is no presumption that a contract is illegal or criminal. The illegality, if alleged, must be established by proof. The contract may be illegal in its nature, or may be shown to be so by extrinsic facts. It is a fundamental principle governing the law of usury that it must be founded on a loan or forbearance of money. If neither of these elements exists, there can be no usury, however unconscionable the contract may be. The law declares that no one shall loan money exacting for its use more than legal interest, or, having loaned money, he shall not exact a greater rate as a condition of postponing payment.

It is conceded that Stokes gave no money to Mrs. Fiero, and that she received none. The transaction between Hoskins and Stokes was a payment by a debtor to his creditor of $1,500 upon an admitted debt, in part by causing a transfer of a debt owing to him to be made by his debtor, Mrs. Fiero, to his creditor, Stokes. The transaction between Hoskins and Mrs. Fiero was a payment by her to him of her debt of $800 by inducing Stokes to take the mortgage on her land in payment of so much of the debt owing by Hoskins to him, and this payment being made and accepted she acquired a right to a conveyance from Hoskins of the legal title to her land. The transaction between Stokes and Mrs. Fiero was the acceptance by him of the $800 mortgage executed by her, as payment by Hoskins of so much on his mortgage of $2,500. The $15 was exacted by Stokes for his consent to make a change of securities, thereby releasing the land mortgaged by Hoskins to the extent of $800 from the lien of his mortgage,

and substituting the mortgage of $800 given by Mrs. Fiero as security for that sum. This was, we conceive, a legal and valid transaction. Stokes was not bound to make any change in his security. The mortgage of Mrs. Fiero was not only on different land, but the terms of payment were different. Stokes could lawfully demand compensation for assenting to the transaction. It is immaterial what his motive was in assenting, or that the exaction of $15.00 was made, as a way of getting more than six per cent on his investment. There was no borrowing and no lending. There was no loan, and in the absence of a loan in law or fact there was no usury. The transaction was not usurious as an agreement for forbearance. The original mortgage of $2,500 was not payable until 1893. The mortgage in question was payable in 1891.

We think no defense was made out and the judgment of the Special and General Terms should be reversed and a new trial granted, with costs to abide the event.

All concur, except HAIGHT, J., not sitting.

Judgment reversed.