KLEIN v. TITLE GUARANTY & SURETY CO.

(Circuit Court, E. D. Pennsylvania. January 19, 1909.)

No. 43.

1. COURTS (§ 322*) — FEDERAL COURTS — CITIZENSHIP OF PARTIES—PLEADING—AMENDMENT.

Where plaintiff in a suit in a federal Circuit Court was not the real party in interest, and the declaration did not show the real party's interest or contain proper averments concerning his citizenship, permission would be granted to amend in such respects within 10 days.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 887; Dec. Dig. § 322.*]

2. USURY (§ 18*)—"LOAN OR FORBEARANCE OF MONEY"—BONDS.

Where a bond guaranteed that the principal would return certain securities on a specified day, and contained no provision either permitting or requiring the principal to discharge his obligation by payment of money on or before the day named, which he was authorized to do by a collateral agreement, the bond was not given for the "loan or forbearance of money" within the New York usury law (1 Rev. St. [1st Ed.] pt. 2, c. 4, tit. 3, § 5), making all bonds, whereon is reserved any greater sum than 6 per cent. for the loan or forbearance of any money, void.

[Ed. Note.—For other cases, see Usury, Cent. Dig. § 32; Dec. Dig. § 18.*]

3. PRINCIPAL AND SURETY (§ 99*)—SURETY'S OBLIGATION—INCREASE.

Where a surety bond guaranteed the principal's return of certain loaned securities on or before a specified day, the surety's legal obligation was not increased by a collateral agreement under which the principal might discharge his obligation by the payment of money at his option instead of returning the bonds.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. § 158; Dec. Dig. § 99.*]

4. USURY (§ 113*)—DEVICE TO EVADE—BURDEN OF PROOF.

That a bond securing the return of certain securities at a specified date for the loan of which the principal paid an amount in excess of 6 per cent. on the value of the bonds was a mere device to evade usury was a matter of defense, the burden of proof of which was on the surety in an action on the bond.

[Ed. Note.—For other cases, see Usury, Cent. Dig. § 308; Dec. Dig. § 113.*]

5. USURY (§ 119*)—INTENT—QUESTION FOR JURY.

The question of intent as affecting a defense of usury is ordinarily a question for the jury, unless it clearly appears on the face of the transaction or from facts before the court.

[Ed. Note.—For other cases, see Usury, Cent. Dig. § 345; Dec. Dig. § 119.*]

6. USURY (§ 12*)—LOAN OF BONDS—INTENT.

That more than 6 per cent. was paid by a borrower for the loan of bonds to be used in financial transactions was insufficient to show an intent to

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

violate the usury laws, it being reasonable to suppose that a part of the charge was to guard against fluctuations in the price of the bonds.

[Ed. Note.—For other cases, see Usury, Cent. Dig. § 23; Dec. Dig. § 12.*]

Motion by Defendant for Judgment Notwithstanding the Verdict.

Kellogg, Beckwith & Emery and Morgan, Lewis & Bockins, for plaintiff.

John W. Graham, Jr., and Alex. Simpson, Jr., for defendant.

J. B. McPHERSON, District Judge. This case was tried at the same time as Baglin v. Title Guaranty & Surety Co., in which an opinion has just been filed (166 Fed. 356), and a similar course of procedure was followed here; that is, both parties agreed that no facts were in question, and the finding was committed to the court. In accordance with that agreement, I now find the facts to be as follows:

Under date of August 1, 1907, an agreement in these words was entered into between the plaintiff and Garrett B. Linderman:

"Memorandum of agreement made and entered into this first day of August, 1907, between Emil Klein of the city, county and state of New York, party of the first part, and Garrett B. Linderman of South Bethlehem, Penn., party of the second part.

"In consideration of one dollar to him in hand paid, the receipt whereof is hereby acknowledged, and of other good and valuable considerations, and of the mutual promises and covenants herein, and in consideration of the execution and delivery of a certain bond or undertaking conditioned for the return to party of the first part of the United States government bonds hereinafter referred to, which said bond and undertaking is executed by the said party of the second part as principal and the Title Guaranty and Surety Company, a Pennsylvania corporation as surety, and which is delivered to the party of the first part by the party of the second part contemporaneously herewith, the party of the first part agrees to loan, and hereby does loan, to said party of the second part United States government 3's coupon bonds due 1908 of the par value of $30,000, a true and correct list whereof is hereto attached marked 'Exhibit A' and made a part hereof.

"And in consideration of the loan of the bonds above referred to, the receipt whereof contemporaneously with the execution and delivery of these presents is hereby acknowledged, and in consideration of one dollar and other good and valuable considerations and of the mutual promises and covenants herein contained, the said party of the second part hereby undertakes and agrees to return to the said party of the first part the aforementioned securities on or before the 4th day of November, 1907.

"In witness thereof the parties have hereunto set their hands and seals this 1st day of August, 1907, in duplicate.        Emil Klein, [Seal.]
                                    "Garrett B. Linderman,   [Seal.]
                                    "By Henry B. Twombley, Atty. in Fact."

In conformity with this agreement, Linderman applied to the defendant company for a bond, stating in the following paragraph the character of the guaranty required:

"Garrett B. Linderman, who owns United Copper stock, has deposited same under a general pooling agreement, and being desirous of using $30,000 of said stock for purposes of collateral, the said Emil Klein has agreed to loan to the said Garrett B. Linderman, U. S. government bonds [known as U. S. Gov't 3's] at the par value of $30,000, and the said Linderman has agreed to return the said bonds to the said Emil Klein on or before November 4, 1907."

The application was accepted, a premium of $300 was paid, and the bond in suit was executed and delivered to Klein in the city of New York. Its provisions were as follows:

"Know all men by these presents, that we Garrett B. Linderman of South Bethlehem, Pennsylvania, as principal, and the Title Guaranty & Surety Co., a corporation organized under the laws of the state of Pennsylvania, as surety, are held and firmly bound unto Emil Klein of New York City in the sum of thirty thousand dollars, to be paid to the said Emil Klein, his heirs and assigns, for which payment, well and truly to be made, we do bind ourselves, our heirs, executors, administrators, successors and assigns, jointly and severally by these presents.

"Signed and sealed this first day of August A. D. 1907.

"Whereas the said Emil Klein has loaned, or is about to loan, to Garrett B. Linderman, United States government 3's coupon bonds due 1908, of the par value of thirty thousand dollars, a true and correct list whereof is hereto attached marked 'Exhibit A' and made part hereof; and

"Whereas the said Garrett B. Linderman has promised and agreed to return to the said Emil Klein the aforementioned securities, on or before the fourth day of November, 1907.

"Now the condition of this obligation is such, that if the said Garrett B. Linderman, his heirs, executors, administrators, successors or assigns, shall and do return to the said Emil Klein, his executors, administrators and assigns, the above-mentioned securities, on or before the fourth day of November, 1907, then this obligation shall be void; otherwise to remain in full force and virtue.                    Garrett B. Linderman. [Seal.]

"The Title Guaranty & Surety Co.,
"By George F. Parker,
"Attest: Frank R. Parker,                                    Resident Vice Pres.
"Resident Secretary. [Seal of Co.]"

The transaction was completed on August 5th, when Klein delivered the bonds to Linderman, by whom they were afterwards sold and the proceeds applied to his own purposes. Klein was the cashier of the Mercantile National Bank of New York City, of which F. A. Heinze was president, and acted throughout the transaction as Heinze's representative and agent. The money used in the purchase of the bonds came from Heinze, and Klein had no pecuniary interest in what took place, although he acquired legal rights thereby and assumed legal obligations. Neither the identical bonds, nor similar bonds, were returned on November 4th, or at any other time, and no payment of their value has ever been made or tendered. On November 14th Klein assigned all his interest in the contract to Baglin, including authority to sue thereon.

When the agreement of August 1st was entered into, it was understood between Klein, Heinze, and Linderman that Linderman might fulfill his promise to return the bonds on November 4th by paying their value in cash, but he was under no contractual obligation to pay the money, his only legal undertaking being contained in the agreement of August 1st. When the bond in suit was executed and delivered, the defendant company had no knowledge of the understanding between Klein, Heinze, and Linderman.

So far as these facts present questions that have already been discussed in Baglin v. Title, etc., Co., it is enough, I think, to refer to the opinion filed in that case for the reasons supporting the following conclusions:

1. Assuming that Heinze is the real party in interest, and in view of the fact that the record does not show such interest or contain proper averments concerning his citizenship, permission to amend within 10 days is given to the plaintiff by adding, wherever necessary, "to the use of F. A. Heinze," and by adding also averments to show his citizenship.

2. Defendant has failed to prove that a guarantee of the repayment of money would have been beyond its corporate power; and

3. It has not shown the concealment of any material fact affecting the bond in controversy.

A question peculiar to this suit remains to be considered. When the United States 3's were delivered, Linderman paid the sum of $900 to Klein, and this money was afterwards paid to Heinze. It included 1½ per cent. interest for three months upon the par value of the government bonds, and 1½ per cent. commission, and the defense is set up that the payment of the commission was usurious and made the whole transaction invalid. The New York statute upon the subject of usury is as follows:

"Sec. 5. All bonds, bills, notes, assurances, conveyances, all other contracts or securities whatsoever [except bottomry and respondentia bonds and contracts], and all deposits of goods or other things whatsoever, whereupon or whereby there shall be reserved or taken, any greater sum, or greater value, for the loan or forbearance of any money, goods or other things in action, than is above prescribed [that is, 6 per cent. interest] shall be void." 1 Rev. St. (1st Ed.) pt. 2, c. 4, tit. 3, § 5.

To determine whether this statute applies, it is necessary to have clearly in mind that the precise question now presented is whether the bond in suit is void. By this instrument the defendant guaranteed that Linderman would return certain securities on a specified day, and the contract by which Linderman was bound imposed upon him no other legal obligation. The option that he undoubtedly possessed of paying cash on November 4th, instead of delivering bonds, was not a contract that bound him so to pay; it was a privilege which he might or might not exercise. It is nowhere made a part of the bond in suit, and the defendant could certainly not be held liable for Linderman's failure to pay money, because it had guaranteed no such obligation. The bond, therefore, cannot, as I think, be held to be a security given for "the loan or forbearance of money"; it is a security given to protect a loan and promised return of bonds, and would unquestionably have been discharged by such return. The fact that it might have been discharged also by the payment of money at Linderman's option did not increase the defendant's legal obligation, and did not expand the bond so as to add another term thereto. If the contract is to be construed as the defendant contends, namely, that it requires the return of the identical securities, then it is clear that the lender could charge whatever he pleased, without rendering the contract usurious. Cummings v. Williams, 4 Wend. (N. Y.) 679. And the same result would obviously follow if the contract would be satisfied (and in my opinion it would be satisfied) by the return of similar bonds. This is as far as the written contract goes, and the defendant was bound to nothing else. The option to pay cash that Linderman possessed was not a term

of the defendant's contract at all, and therefore did not affect the company's obligation injuriously. It was a privilege, the result of an understanding that did not legally bind, and therefore could not be enforced. For these reasons, the bond in suit cannot, in my opinion, be regarded as a instrument for the loan or forbearance of money, and does not fall within the terms of the New York statute. To be obnoxious to that act, the transaction must be founded on such a loan or forbearance; if it belongs to another class of agreements, there is no usury, no matter how unconscionable the contract may be. Meaker v. Fiero, 145 N. Y. 165, 39 N. E. 714; Orvis v. Curtiss, 157 N. Y. 657, 52 N. E. 690, 68 Am. St. Rep. 810.

I have been speaking of the form of the contract in question, and I think there can be no doubt that, in form at least, the bond does not offend against the usury laws of New York. But it is true that the form of the particular contract is not conclusive; if it be proved that the transaction is a mere device to evade the statute against excessive interest, unquestionably its form will not save it. This, however, is a matter of defense. The affirmative of such an issue is upon the party that relies upon the charge of illegality (Haughwout v. Garrison, 69 N. Y. 339); he has the onus of proving guilty intent, and that the contract is a cover for extorting an illegal rate (Matthews v. Coe, 70 N. Y. 239, 26 Am. Rep. 583; White v. Benjamin, 138 N. Y. 623, 33 N. E. 1037). Moreover, intent is ordinarily a question for a jury, unless it should clearly appear from the face of the transaction or from facts laid before the court (Elwell v. Chamberlin, 31 N. Y. 618); but as the questions in the case have been submitted to me by the parties, I am bound to say—and I so find as a fact—that in my opinion the intent to violate the usury laws has not been proved. Indeed, I think it may well be doubted whether the usury laws entered into the contemplation of the parties at all. They were evidently trying to surmount a different obstacle which was believed to exist, namely, the supposed lack of corporate power in a surety company to guarantee the repayment of money; and it was to this end that their efforts were directed. Holding their written contract, therefore, to mean what it says, it was not unreasonable to charge a commission of 1½ per cent. in order to guard against fluctuation in price of the bonds in question. It appeared from the uncontradicted testimony that government bonds do fluctuate in price, and that the particular issue in question, United States 3's, varied from 2 or 3 per cent. during the year 1907.

The motion for judgment notwithstanding the verdict is refused, and to this refusal an exception is sealed in favor of the defendant.