AGNES LYONS, Plaintiff, *v.* NATIONAL SAVINGS BANK OF THE CITY OF ALBANY, Defendant.

County Court, Albany County, July 6, 1951.

*Roland Ford* for defendant.

*Donald J. Lyons* for plaintiff.

SCHENCK, J.  This is a motion by the defendant for an order pursuant to rule 112 of the Rules of Civil Practice for judgment on the pleadings, and also for summary judgment in favor of the defendant pursuant to rule 113.  Although there do not appear to be formal motion papers submitted by the plaintiff, the matter is apparently regarded by both parties to encompass a cross motion by the plaintiff to dismiss the answer as being insufficient as a matter of law.

In substance, the pertinent facts are as follows:  The plaintiff entered into a mortgage extension agreement with the defendant on March 25, 1949.  The debt then outstanding amounted to $2,595.  The extension agreement was to run to March 25, 1954.  The interest payment during the first couple of months of this period was to be at the rate of 4% per annum; subsequently it was to be at the rate of 4½% per annum.  The principal sum was to be reduced at the rate of $15 per month, and the mortgagor was to have the privilege of paying up to $1,000 on account of principal in addition to the $15 monthly payments during any calendar year.

On July 21, 1950, the principal balance outstanding on the mortgage was $2,416.30.  Plaintiff contends that she attempted on that date to pay this outstanding principal balance, and that the defendant refused to take prepayment unless she paid a bonus of 3% on the original amount of the mortgage which had been executed by her husband in 1944, and which was $3,500.  The bonus accordingly demanded by the bank was $105.  This amount was paid and the mortgage satisfied.

Plaintiff now contends that the demand for the $105 bonus amounted to usury, and this action is brought under section 108 of the Banking Law to recover the penalty provided for usury, which is twice the entire amount of interest paid.

Two questions must first be answered.  Does the $105 bonus constitute interest?  Secondly, if it does constitute interest, did all payments on account of interest aggregate a sum greater than the interest that could lawfully have been earned had the debt continued to the earliest maturity date?

With respect to the first question, the bonus of 3% on the original principal sum has not been characterized as interest by the defendant bank, nor was it set up as interest in any agreement between the parties hereto, or in the original mortgage agreement between the plaintiff's husband and the defendant. The sum, however, has to be characterized in some manner. I do not believe that terminology alone can affect its intrinsic character. Whether the amount be called a bonus or a penalty, or anything else is immaterial. The fact remains that it was a sum demanded by the defendant bank and paid by the plaintiff as an integral part of a loan of money, the security for which was the mortgage. It is true that the defendant did not need to accept prepayment. However, the fact remains that it did, and that some basis must be recognized for the acceptance of the sum. I fail to see any other basis to which this payment may be ascribed other than what, in legal effect, must be characterized as interest. I therefore find that the first question must be answered in the affirmative.

I am aware that the $105 was not paid specifically in consideration of the making of a loan or of forbearance of money. As I have stated, however, I can only recognize that the payment was so integrated into the loan transaction that it became a part of the repayment thereof, and as such cannot be regarded as anything except interest in the accepted sense of the word within the meaning of the Banking Law. Furthermore, I am not unmindful of the most recent and presumably prevailing decision upon this point, the case of *Feldman* v. *Kings Highway Sav. Bank* (278 App. Div. 589*). That decision, however, brings us squarely to the second question, which must be answered. In the *Feldman* case, the court found in reversing a decision of the Supreme Court at Special Term that, even if the bonus involved was regarded as interest, all payments on account of interest did not aggregate a sum greater than the law allows, to wit, 6%, had the debt continued to its earliest maturity date.

In the case at hand, and using the figures submitted in connection with defendant's memorandum of law, the amount of interest that was collected prior to July 21, 1950, from the date of the start of the extension period, totaled $148.22. This included interest for a short period at 4% and for the balance of the period at 4½%, as provided in the extension agreement. During this period the lawful interest that could have been charged, to wit, 6%, would have entitled the bank to $197.70 so that for the

---

* Since affd. without opinion 303 N. Y. 675.— [REP.

period prior to the prepayment date the bank could have charged the additional sum of $49.48, representing the difference between these two figures. From July 21, 1950, to the earliest possible maturity date, which would have been October 15, 1952, according to the bank schedule, interest at 4½% would have amounted to $40.50 and for the same period would have amounted to $54.01 if computed at the maximum legal rate of 6%. Accordingly, at the time at which the bank received the additional $105, it could only legally have received an additional $54.01, under the terms of the agreement. If the balance owing on the date of the prepayment is to be used as the criterion, therefore, there has been an excess charge of $50.99.

If, however, to regard the matter from the most favorable light with respect to the defendant bank, consideration is given to the fact that 6% could have been charged prior to the date of prepayment, and 6% could have been charged thereafter, the bank would have been entitled to a total of the differences between the $197.70 and $148.22 above referred to, for the earlier period, and the $54.01 and $40.50 subsequently mentioned for the latter period. The total of these two differences would amount to $62.99. This sum would become the maximum excess over the amount of interest covered by the extension agreement to which the bank would be entitled and still remain within the 6% limitation fixed by law. The $105 collected is· $42.01 in excess of this amount.

I therefore hold that the facts herein upon this point are sufficiently different from those of the *Feldman* case (*supra*) to distinguish the result which must be reached here from that of the *Feldman* case. If a contrary rule could be sustained, it would mean that banks and other lending institutions could by indirection achieve results that are prohibited by law. The facts of this case do not represent an isolated instance. This is manifest in view of the practices of lending institutions in establishing fixed percentages, or, on occasion, fixed sums for the privilege of prepayment of loans prior to the maturity date. The purpose of the laws against usury is to protect people from entering into agreements to which they may be driven by force of circumstances pursuant to which they would be compelled to pay exorbitant rates of interest. Under the conditions of fluctuation in modern normal life, circumstances often arise in the course of a mortgage term which make it necessary for a mortgagor to dispose of his property. Changes in family status, changes in location of jobs, loss of employment, and many other factors

enter into this picture. If the law desires to protect people from usurious rates of interest at the inception of a mortgage agreement, it would be inconsistent to permit people to be assessed additional penalties, premiums or bonuses when because of no fault of theirs they are compelled to dispose of the mortgaged premises. In my opinion, under existing law, they should be permitted to do so by paying no more than the interest rate prescribed in the Banking Law. Of course, a person who gives a mortgage without an acceleration of payment clause has placed himself in a position where he cannot satisfy the mortgage if the bank or other lending institution refuses to let him so satisfy it before the maturity date. That, however, is a different proposition than permitting a mortgagee to collect usurious interest if prepayment is allowed. It is true that in the case at hand the amount involved is small and barely in excess of the legal 6%. However, if the principle is upheld that bonuses such as that under consideration here are legal, any amount could be required. Laws basically designed to protect the public should not be interpreted to reach this result.

The defendant refers to *Meaker* v. *Fiero* (145 N. Y. 165) as authority for settlement of the question at issue. I believe it is clear that the *Meaker* case is good authority for all points cited therein, but I fail to see that the facts therein coincide with those involved in this case. The fact that the amount of the bonus herein so clearly exceeds the legal interest rate, in my opinion, distinguishes this case from authorities which might otherwise appear to be contrary. I do not agree with the plaintiff that the pleadings herein permit disposition of this matter on the theory of duress and coercion under the authority of *Kilpatrick* v. *Germania Life Ins. Co.* (183 N. Y. 163). In view of the conclusion that I have reached, however, independent of the rule set forth in that case, further consideration of this point is immaterial.

An order may accordingly be entered striking out the answer herein as being insufficient as a matter of law. Defendant's motions are denied.

(Supplemental opinion, September 26, 1951.)

In my previous opinion upon this case, I found that the defendant had violated the provisions of law relative to usury and that the plaintiff was entitled to recovery. The defendant now contends that even if this be the case, the plaintiff should not recover under section 108 of the Banking Law, but should be limited to

recovery under the provisions of the General Business Law relative to usury. (General Business Law, § 370 *et seq.*) I am unable to agree with this position, and I am constrained to hold that the plaintiff is entitled to recover double the total amount of interest paid since March 25, 1949, in accordance with section 108 of the Banking Law. Plaintiff computes this sum to be $506.44. My own computation, from the schedule submitted by the defendant, would indicate that the amount should be slightly more, but in view of the demand made by the plaintiff, I will direct that judgment be entered in the aforesaid sum of $506.44.

I base my conclusion upon the fact that for the purposes of preventing usury under section 108 of the Banking Law, the Legislature intended the provisions of that section to cover savings banks as well as commercial banks. I am cognizant of the fact that section 2 of the Banking Law distinguishes between a " bank " and " savings bank ". I believe, however, that that distinction was never intended to apply to restrictions against usury. Section 2, although distinguishing between banks and savings banks, includes a parenthetical clause stating, in effect, that the distinguishing definition applies " unless a different meaning appears from the context ". As far as I can determine, the courts have always held that the context of section 108 is such as to include savings banks. For example, in *East New York Sav. Bank* v. *Lang* (261 App. Div. 981) it was held that the defense of usury under section 108 was available to a defendant who was sued by a savings bank. This position is further buttressed by the fact that the courts have often held that section 108 is applicable to industrial banks and private bankers, even though, on its face, it may be construed as referring only to " banks " and trust companies. Accordingly, I reached the conclusion that the literal interpretation of section 108 urged by the defendant is not only without basis but is contrary to judicial interpretation and precedent, even though the precise point may not have been specifically passed upon.