employé of the defendant. It is argued by the respondent that this evidence was admissible to prove notice to the defendant through Brown. But the opinion of Kliesrath as to Fallon's future conduct was no part of such notice; nor had Brown any power to bind the defendant by any expression of agreement in the opinion of Kliesrath as a part of a conversation in an adjoining tavern. We think this evidence was highly prejudicial to the defendant, and that it was error to receive it.

The judgment and order should be reversed and a new trial granted, costs to abide the event. All concur.

---

### HALL v. EAGLE INS. CO.

(Supreme Court, Appellate Division, First Department. July 11, 1912.)

1. MORTGAGES (§ 27*)—EQUITABLE MORTGAGES—NATURE OF TRANSACTION—
LOAN.

Plaintiff was the owner of a vested remainder in an undivided one-sixth of the residuary estate of his father by whose will, which had been admitted to probate, such fund was bequeathed to the executors in trust during the life or until remarriage of testator's widow, without authority to pay over any part thereof, or to sell or transfer the same until after her death or remarriage. Plaintiff, becoming 24 years of age, and when the widow was 63 years old, with a life expectancy of 13 years, in order to raise money, executed an instrument by which, in consideration of receiving $15,500 from defendant, plaintiff "granted, bargained, sold," etc., to it and its successors out of his total share in said estate, on the death of the widow, the sum of $34,500, with interest at 6 per cent. from the widow's death until the money "sold and assigned" out of the estate should be received, etc., but without personal obligation to pay the indebtedness. In addition, plaintiff executed a mortgage on his undivided one-sixth interest in several parcels of land which constituted a part of such residuary estate, conditioned that defendant should receive $34,500, with interest, out of plaintiff's share, and also executed a surety bond to secure the faithful administration of the trust by the executors. *Held,* that such transaction constituted a loan secured by an equitable mortgage on plaintiff's interest in the estate, and was not an assignment of $34,500 of plaintiff's share therein.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 43, 45–53, 55 : Dec. Dig. § 27.*]

2. MORTGAGES (§ 591*)—RIGHT TO REDEEM—BILL.

Where plaintiff executed a mortgage on his vested interest in his father's estate, and not an assignment of such interest, to secure a loan, he was entitled to file a bill to redeem on payment of the amount due, provided the loan was not void for usury.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 1693, 1694–1708; Dec. Dig. § 591.*]

3. USURY (§ 12*)—NATURE OF TRANSACTION.

On an issue of whether a transaction is usurious, it is the duty of the court to examine into the substance of the transaction between the parties, and determine whether, independent of the form of the same, there was a pervading intent to violate the usury law.

[Ed. Note.—For other cases, see Usury, Cent. Dig. §§ 23, 24, 146; Dec. Dig. § 12.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. USURY (§ 18*)—WHAT CONSTITUTES.

　　Any profit made or loss imposed on the necessities of the borrower, whatever form, shape, or disguise it may assume, where the treaty is for a loan and the capital is to be returned at all events, is so much profit taken on a loan, and, if the amount exceeds the rate of interest specified by law, the transaction is usurious.

　　[Ed. Note.—For other cases, see Usury, Cent. Dig. §§ 31–34, 36–38, 40; Dec. Dig. § 18.*

　　For other definitions, see Words and Phrases, vol. 8, pp. 7246–7249.]

5. USURY (§ 18*)—CONSTRUCTION TO VALIDATE INSTRUMENT.

　　Plaintiff, owning an undivided one-sixth in the remainder of his father's estate, subject to the life estate of the widow, 63 years of age, with a life expectancy of 13 years, and being unable to obtain any part thereof until the widow's death or remarriage, in consideration of a loan to him by defendant of $15,500, agreed to repay out of his interest in the estate on the widow's death or remarriage, but without personal liability, $34,500, and, to secure the same, executed an assignment of so much of his interest, together with a mortgage on his interest in certain real property forming a part of such remainder, and a bond to secure the faithful performance of the duties of the executors in handling the fund. *Held*, that since, if such instruments be construed as an agreement to repay $34,500 for the use of $15,500 at the end of the widow's expectancy, it would be void for usury, and the transaction being susceptible of a construction that plaintiff thereby pledged his interest in the estate to the amount of $34,500 as collateral security for the payment of $15,500, with interest at the legal rate, it would be so construed, and plaintiff would be entitled to redeem on paying the amount received with legal interest.

　　[Ed. Note.—For other cases, see Usury, Cent. Dig. §§ 31–34, 36–38, 40, Dec. Dig. § 18.*]

　　Dowling, J., dissenting.

Appeal from Special Term, New York County.

Action by Louis R. Hall against the Eagle Insurance Company. From a judgment in favor of defendant, plaintiff appeals. Reversed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, CLARKE, SCOTT, and DOWLING, JJ.

Alfred G. Reeves, of New York City, for appellant.
Edward Bruce Hill, of New York City, for respondent.

INGRAHAM, P. J. [1] Prior to the 4th day of March, 1909, one Thomas H. Hall died, leaving a last will and testament, which was duly admitted to probate, by which he gave, devised, and bequeathed to his executors all his real and personal estate for the use and benefit of his wife during her life, or so long as and no longer than she remained his widow, and, after her decease or remarriage, gave, devised, and bequeathed the same to his children, share and share alike, on their attaining the age of 21 years, or sooner if girls, and if they married with the approval of the testator's brother. There was no power of sale, and the remainder vested absolutely, and was not subject to be divested. The plaintiff was one of the decedent's children, and on the 9th of March, 1909, was about 24 years of age. The testator's widow was on that day upwards of 63 years of age, and still unmarried, and the share of the plaintiff

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

in the estate of his father in which he had a vested remainder was valued at $70,000. The property constituting the trust estate consisted of real and personal property, and was in the possession of the trustee under the will.

Prior to June, 1908, the plaintiff had been in need of money, and had been trying to procure a loan or advance upon his interest in the trust estate. He had retained a lawyer to accomplish this purpose, and apparently under the advice of this lawyer he in June, 1908, signed an agreement with Jenner & Co., which recited the will and the interest of the plaintiff in the property; that the plaintiff had applied to Jenner & Co. for the sale of a first charge in the amount of $34,500 upon his interest under the will of Thomas Henry Hall, deceased, and that Jenner & Co. were willing to negotiate the said sale, therefore, the plaintiff agreed that the said Jenner & Co. would obtain a purchaser for said interest and that plaintiff would make said sale; that the plaintiff would, upon the receipt of the purchase price agreed to, to wit, the sum of $10,000, execute and deliver an assignment in due form sufficient to sell, assign, transfer, and set over to said purchaser his interest under the will of the aforesaid Thomas Henry Hall, deceased, to the amount and extent of $34,500, "which sum shall be in and by said assignment a first charge upon his interest in said estate and shall become due and payable therefrom to whomsoever shall make said purchase upon the death or remarriage of Marie Louise Hall [the testator's widow]. * * * No demand for the payment of said charge shall be made until the same shall become due as above set forth, and no individual personal liability on the part of the said Louis R. Hall shall exist for the payment of said charge." This agreement does not seem to have been executed by Jenner & Co. Nothing seems to have been done under this agreement until March, 1909, when an arrangement was made by the defendant by which the plaintiff was to obtain the $10,000, and for that purpose the parties met at the office of Sullivan & Cromwell, attorneys at law. There were there present the plaintiff and his wife, a Mr. Shope, who acted as attorney for Jenner & Co., a representative of Sullivan & Cromwell, and Mr. Goodhue, an attorney, who represented the plaintiff. Certain instruments had been prepared by the defendant's lawyers, and were then presented to the plaintiff and his wife, who executed them. Checks of the defendant's attorneys were then handed to the plaintiff, one for $10,-000 to the order of the plaintiff, which he received and retained, one to the order of the plaintiff for $1,000, which he indorsed and delivered to Sullivan & Cromwell, the attorneys for defendant; one for $1,000 to the order of the plaintiff; one for $1,500 to the order of the plaintiff, and one for $2,000 to the order of the plaintiff, which he indorsed and delivered to Shope; thus making a total of $15,500, represented by checks drawn by the attorneys for the defendant to the order of the plaintiff and indorsed by him. Of that sum of $15,500 the plaintiff received $10,000, the remainder being paid $1,000 to Sullivan & Cromwell, and $4,500 to Shope.

It would appear that the estate of the plaintiff's father which was

held in trust and in which the plaintiff has this vested remainder consisted of 6 pieces of real estate, five of which were located in the city of New York and one at New Rochelle, and of three first mortgages on real property within this state, and seventy shares of stock of a railroad company; the real estate having been valued at $185,-000, and the personal property at $205,000, of which the plaintiff had a one-sixth undivided interest. The plaintiff, therefore, was the owner of an undivided one-sixth interest in the real property, and one undivided sixth part of certain mortgages and railroad stock, subject to a life estate of his mother. The first question presented is: What was the essential character of the transaction between the, plaintiff and defendant as disclosed by the instruments that plaintiff executed at that time?

The first instrument presented is what was called an indenture, in which the plaintiff and his wife were the parties of the first part, and the defendant the party of the second part. It was therein recited that the plaintiff's father had died on January 19, 1901, leaving a last will and testament which had been duly admitted to probate; that the testator had in and by said last will and testament devised and bequeathed all his real and personal estate to the executors therein named for the use and benefit of the testator's wife so long as and no longer than she remains a widow, and, upon the death or remarriage of his said wife, he devised and bequeathed the same to his children, share and share alike; that the executors and trustees were still acting as such, and that the plaintiff was one of the six children of the testator over the age of 21 years, and entitled to receive one-sixth of the residuary estate of said testator upon the death or remarriage of the said widow. The indenture then witnessed that the parties of the first part (plaintiff and his wife), in consideration of certain valuable consideration and the sum of $100—

"have granted, bargained, sold, assigned, conveyed, transferred and set over, and by these presents do grant, bargain, sell, assign, convey, transfer and set over unto the said party of the second part, and its successors and assigns forever, out of the total property, interest, legacy or distributive share of the said Louis R. Hall, one of the parties hereto of the first part, in the estate of Thomas H. Hall, deceased, which he is or shall be entitled to receive upon the termination of the prior estate limited in said will to the executors therein named during the life of Marie Louise Hall, the widow of the testator, or until she remarries, the net or clear sum of thirty-four thousand five hundred dollars ($34,500) free, clear, and discharged of all duties, taxes, costs, commissions, and expenses which may accrue or be due and payable in respect of the estate of said testator by the realization and distribution thereof, or of the interest or share of the said Louis R. Hall, party of the first part, therein, with interest on said sum of $34,500 at the rate of six per cent. (6%) per annum from the date of the death of said Marie Louise Hall, or of her remarriage, until the sum of money hereby sold and assigned out of said estate shall be received by the party of the second part, its successors or assigns. To have and to hold the amount hereby granted, bargained, sold, assigned, conveyed, transferred and set over unto the said party of the second part, its successors and assigns forever."

And the plaintiff appointed the defendant his true and lawful attorney to demand, sue for, and receive the amount thereby assigned, with a covenant that the plaintiff had not asssigned or transferred

or attempted to assign or transfer his interest in said estate or any part thereof to any party, and had not mortgaged or incumbered the same.

The plaintiff also at the same time executed a mortgage which recited that the plaintiff and his wife had granted, bargained, sold, etc., unto the defendant out of the total property, interest, devise, legacy, or distributive share to which the plaintiff is or will be entitled, or which he will receive under the will of the above-named testator upon the termination of the prior estate limited in said will to the executors therein named, the net or clean sum of $34,500 free and clear and discharged of all duties, etc., with interest on said sum of $34,-500 at the rate of 6 per cent. per annum from the date of the death or remarriage of the said Marie Louise Hall; and to secure the payment to the defendant of the said sum of $34,500, with interest as aforesaid, the plaintiff and his wife granted and released unto the defendant all their right, title, and interest, being the remainder in an undivided one-sixth in and to several parcels of land thereafter particularly described, and which were the real property devised by the above testator in which the plaintiff had an absolute estate in fee in remainder. And this conveyance was upon the condition that if the defendant should receive the said sum of $34,500, with interest as aforesaid, "out of the share or portion of the estate of the said Thomas H. Hall, deceased, to which the said Louis R. Hall, party hereto of the first part, is entitled as aforesaid upon the distribution of said estate, these presents and the estate hereby granted shall cease, determine, and be void"; it being understood that nothing therein contained should be considered to be a personal covenant or promise for the payment of the said sum of money or the interest thereon, the interest of the said parties of the first part in the above-described premises alone being conveyed and pledged for the payment thereof; that in the event that the defendant should not receive said sum of $34,500, with interest thereon, the defendant should have the power to sell the premises therein described according to law.

The plaintiff also at the same time executed as part of the transaction a bond of the plaintiff as principal and the United States Fidelity & Guaranty Company as surety, whereby the plaintiff and the said Guaranty Company were held and firmly bound unto the defendant in the sum of $20,000, the condition of this instrument reciting the last will and testament of the testator and the estate and interest devised and bequeathed to the plaintiff thereby, that the plaintiff had assigned to the defendant out of the total property devised or distributive share to which he is entitled under the will upon the termination of the prior estate the sum of $34,500, with interest on said sum at 6 per cent. per annum from the date of the death or remarriage of the said life tenant, and has given as security for said assignment his certain mortgage without any bond executed and delivered to the defendant in the sum of $34,500; whereas it appears from the account of the trustees of said estate that of the personal property belonging to said estate there was invested upon bond and mortgage the sum of $351,000, and that a large portion of said $351,000 has been received in cash by

the trustees, and that the object of the bond was to guarantee the faithful performance of the duties of the executors and trustees. The condition of the obligation was such that if the said plaintiff should indemnify and save harmless the said defendant from and against any and all loss or damage that it may suffer or incur by reason or on account of the share of the said plaintiff in the estate of Thomas H. Hall, deceased, at the death or remarriage of said Marie Louise Hall, being insufficient to pay the sum of $34,500, together with interest thereon, assigned by the said Louis R. Hall to the said Eagle Insurance Company, through the failure of the said Marie Louise Hall or Joseph Hall, or either of them, as executors and trustees under the last will and testament of Thomas H. Hall, deceased, to faithfully discharge the trust reposed in them as such and to truly administer and faithfully account for all moneys received by them or either of them as such executors and pay over the same in accordance with the decree of any court of competent jurisdiction, then the obligation to be void, otherwise to remain in full force and effect. The liability of the United States Fidelity & Guaranty Company was in no event to exceed $20,000.

The plaintiff was called as a witness, and testified that he understood that he was borrowing the sum of $10,000, and that the whole transaction was a loan, and nothing else. There was evidence on behalf of the defendant which contradicted this statement, and which raised the question as to the real intention of the parties. We must look, therefore, to the instruments themselves to determine what was the substantial transaction, whether it was a loan of money to be subsequently repaid, or whether there was a sale or transfer of property which became vested in the defendant upon the execution of these instruments.

As before stated, the plaintiff had an undivided one-sixth interest in the residuary estate of his father. He was entitled to no specific sum of money from that estate; and, while undoubtedly he could have sold his undivided interest in the real or personal property in which there had vested in him a remainder in fee, in neither of these instruments was such a sale or transfer effected. There was paid to him for his present use the sum of $15,500. He agreed that at the time of the death or remarriage of his mother there should be paid to the defendant the sum of $34,500. No property was transferred and no money existing in specie was transferred, but the defendant acquired the right to have paid to it the sum of $34,500, which was to be in some way realized out of the plaintiff's property upon the death of his mother. To secure the payment of this sum which the plaintiff had agreed should be repaid to the defendant, he gave a mortgage upon his interest in the real estate in which he was an owner in fee subject to the life estate. There was no power of sale in the will. The trustees could make no disposition of the plaintiff's interest in that real property.

It seems to me there can be no question but what this transaction was essentially a loan of money, and, charging the plaintiff with the whole of the $15,500 which was actually paid to and received by him,

the defendant required the plaintiff to execute these instruments by which it was to receive the amount loaned and $19,000 in addition thereto. Although the instrument executed by the plaintiff was in form a transfer of $34,500, there was no $34,500 to transfer. The plaintiff did not have that sum of money, and nobody held that sum. Certain trustees held certain property in which he had a vested remainder, but neither the trustees nor the life tenant could dispose of the plaintiff's interest in the real property of which a life estate had been devised to the trustees, nor could the trustees in any way dispose of that estate so as to raise this sum of money to which the defendant would be entitled upon the death of the plaintiff's mother. The essential character of this transaction, it seems to me, was a loan to the plaintiff, the repayment of which was assured on the death of his mother with an additional sum of $19,000, and to secure that he gave to the defendant a mortgage on the real estate that had vested in him, and a bond with the Guaranty Company as surety, conditioned upon the payment by the trustees to it of the plaintiff's interest in the personal property up to the amount that it was to receive from the plaintiff's property. There was here every characteristic of a loan, except the personal obligation of the plaintiff to repay the amount, irrespective of the sufficiency of the security taken by the defendant to secure its payment. Certainly the personal obligation of a mortgagor to pay the mortgage indebtedness is not essential to create a valid loan. I assume that a person borrowing a sum of money secured by a mortgage on his property, but with the express stipulation that there should be no liability as against the borrower for any deficiency which might arise upon the sale of the mortgaged property, would not destroy the essential character of the transaction as a loan of money. Nor would the fact that a conveyance of real property was given, which, although absolute on its face, was in reality security for the payment of a sum of money at a future time, be held not a loan because the grantor was not to be liable for any deficiency. What is essential to a loan is that there should be an advance of a sum of money from the lender to the borrower which is to be repaid either by the borrower personally or out of his property; and, if that is so, there would seem to be no doubt but what this transaction was a loan of money by which the defendant advanced to the plaintiff $15,500, with an understanding that the sum of $34,500 was to be received by the defendant upon the death of the life tenant.

We must keep in mind what seems to me the clear distinction between the obligation assumed by the parties in this case and an assignment, whether equitable or legal, of the whole or a portion of the money due or to grow due to the transferror from the transferror's debtor, as in the case of a deposit in a bank where the bank owes its depositor a sum of money. In such a case, of course, it would be perfectly competent for the depositor to transfer to a third person a proportion of the amount on deposit for which the depository is personally liable to the transferror. Such a transfer would be an assignment pro tanto of the debtor's obligation to its creditor, and whether such a transfer would be enforceable at law or in equity as a transfer of def-

inite property, namely, the debt or a portion of it, the transferee would assume the risk of the solvency of the debtor and his ability to collect the proportion of the debt assigned or transferred from him. There would be in such a case an actual res which would be subject to transfer. But in the case before us there was no indebtedness of any one to the plaintiff. He was the absolute owner of this real and personal property held for him by trustees who had no power to sell it or divest him of the title to it. His right to the possession or enjoyment of it was postponed until the death of his mother. The title had absolutely vested, and while he had a right to convey or transfer his property, namely, the undivided interest in the corpus of the trust, the only way that he could divest himself of his title was by such a conveyance of the corpus of the trust; and this neither of the instruments executed by the plaintiff purported to do. What he did was to grant, bargain, sell, assign, convey, transfer, and set over unto the defendant out of the total property, interest, legacy, or distributive share which he has or shall be entitled to receive upon the termination of the prior estate, the net or clear sum of $34,500, and he constituted the defendant his true and lawful attorney irrevocably to ask, demand, sue for, collect, receive, compound, and give acquittances for the amount thereby assigned. And he secured the payment of this sum of money to the defendant by his bond with sufficient surety and his mortgage upon the real property of which he owned a remainder and over which the trustees had no power or control except to collect the income during the life of the life beneficiary. This can mean nothing but an obligation to repay to the defendant the amount of the advance made to the plaintiff of $15,500 and the further sum of $19,000.

[2] Having established the character of this transaction as a loan by the defendant to the plaintiff, undoubtedly the plaintiff would have a right to file a bill to redeem upon payment of the amount that was due provided the loan was not void for usury; and the validity of this transaction is, therefore, the next question to be determined.

The subject of interest is regulated by article 25 of the General Business Law (Consol. Laws 1909, c. 20), which went into effect on February 17, 1909, before the time of the execution of the instruments in question. Section 370 of that act provides:

"The rate of interest upon the loan or forbearance of any money, goods or things in action, except as otherwise provided by law, shall be six dollars upon one hundred dollars, for one year, and at that rate, for a greater or less sum, or for a longer or shorter time."

Section 371 provides:

"No person or corporation shall, directly or indirectly, take or receive in money, goods or things in action, or in any other way, any greater sum or greater value, for the loan or forbearance of any money, goods or things in action, that is above prescribed."

Section 373 provides:

"All bonds, bills, notes, assurances, conveyances, all other contracts or securities whatsoever, except bottomry and respondentia bonds and contracts, and all deposits of goods or other things whatsoever, whereupon or whereby

there shall be reserved or taken, or secured or agreed to be reserved or taken, any greater sum or greater value, for the loan or forbearance of any money, goods or other things in action, than is above prescribed, shall be void."

And the court is directed to declare the same to be void and to enjoin any prosecution thereof and order the same to be surrendered and canceled. By section 377 it is provided:

"Whenever any borrower of any money, goods or things in action, shall begin an action for the recovery of the money, goods or things in action taken in violation of the foregoing provisions of this article, it shall not be necessary for him to pay or offer to pay any interest or principal on the sum or thing loaned; nor shall any court require or compel the payment or deposit of the principal sum or interest, or any portion thereof, as a condition of granting relief to the borrower in any case of usurious loans forbidden by the foregoing provisions of this article."

Section 380 provides that:

"No person shall, directly or indirectly, take or receive more than fifty cents for a brokerage, soliciting, driving or procuring the loan or forbearance of one hundred dollars, and in that proportion for a greater or less sum."

By these agreements, as I have construed them, there was a loan of $15,500, and there was to be paid from the plaintiff's property that sum and the sum of $19,000 when the loan became payable. The loan became payable, not at a fixed time, but upon the death of the plaintiff's mother, a woman then over 63 years of age. The interest on $15,500 at 6 per cent. per annum is $930 a year. The payment of this $34,500 to the defendant would have to be postponed over 20 years for the loan to earn the sum of $19,000 as interest at six per cent. It was proved and seems to be conceded that the expectation of life of the plaintiff's mother was about 13 years. While this expectation of life does not imply a probability even that a person of that age would live for 13 years and no longer, still it has been adopted by the courts, as well as by insurance companies and others who have to make payments based on the expectation of human life as a reasonable time upon which contracts may be made or property purchased; and, while there was a possibility that the plaintiff's mother might live for a greater period than 13 years from the date of this transaction, there was also the possibility that she might not outlive that time. What we have to find in the transaction is the intention of the parties, and I think that, if this is to be treated as an actual transfer of $34,500, it was clearly the intention of the defendant to exact from the plaintiff in his necessitous condition a contract by which the defendant could receive for its loan interest at a rate exceeding 6 per cent. As we have seen, there was absolutely no risk assumed by the defendant.

[3] It was early recognized by the courts that, if the form of the contract were to be controlling, the statute against usury would be substantially unenforceable, and thus it was made the duty of the court in each case presented to examine into the substance of the transaction between the parties and determine whether the intent

which pervaded it was one which violated the statute. As was said by Judge Allen in Quackenbos v. Sayer, 62 N. Y. 344:

"The transaction must be judged by its real character, rather than by the form and color which the parties have seen fit to give it. The shifts and devices of usurers to evade the statutes against usury have taken every shape and form that the wit of man could devise, but none have been allowed to prevail. Courts have been astute at getting at the real intent of the parties, and giving effect to the statute."

[4] In United States Bank v. Owens, 2 Pet. 527, 7 L. Ed. 508, the court in delivering the opinion, said:

"A profit made or loss imposed on the necessities of the borrower, whatever form, shape or disguise it may assume, where the treaty is for a loan, and the capital is to be returned at all events, has always been adjudged to be so much profit taken upon a loan, and to be a violation of those laws which limit the lender to a specified rate of interest."

And in an early case in the Court of Appeals of Maryland—Tyson v. Rickard, 3 Har. & J. (Md.) 109, 5 Am. Dec. 424—it was said:

"In the investigation of such questions the original intention of the parties must often be come at by matter de hors the particular instrument of writing executed between them, otherwise the act of assembly would be a dead letter. * * * A stipulation to repay the principal in money is not necessary to constitute a loan. It is enough if the principal is secured, and not bona fide put in hazard, and it matters not what the nature of the security is; it is sufficient. * * * The true ground is, not that there must be a stipulation to repay the principal at all events in money, but that it must in some way be secured, as distinguished from being put in hazard; but whether it is secured by pawn or pledge, or a conveyance of land, or is by agreement to be returned in lands, goods or money, is not material. If the principal is secured and the interest reserved is more than the law allows, it is usury."

[5] We have here the advance of a sum of money by the defendant to the plaintiff, and an arrangement by which the defendant was absolutely assured the repayment of the money advanced out of the plaintiff's property, which was ample security for its repayment. While in form there was an assignment of a sum of money which was to be paid out of the plaintiff's property, the substantial effect of the agreement was that out of the plaintiff's property the defendant was to receive a sum of money which would repay it this advance and an additional sum, which sum could only be the profit or interest that the defendant would receive as a condition of making the advance. As I read these agreements, there was no actual transfer of the property, but a simple arrangement by which the plaintiff was to be paid $15,500 at the time the agreement was executed, for which the defendant was to receive the sum of $34,500 on the death or remarriage of the plaintiff's mother; and the mortgage given to secure this repayment seems to me to be characteristic of the transaction. The evidence is undisputed that the plaintiff originally applied for a loan of $10,000, and in answer to that application was informed that the advance would be made upon the execution of the instrument in question. The plaintiff received the $10,000 that he required and $5,500 which was divided among those engaged in procuring this loan for him, and he agreed that the sum of $34,500

should be repaid to the defendant out of this property upon the death or remarriage of his mother. The mere fact that there was no personal obligation on the part of the plaintiff to pay except in the event of the trustees of his father's estate failing to perform their duty is not at all material, so long as the defendant was assured the return of this money, and the amount reserved to it in addition to the amount advanced out of the plaintiff's property at the expiration of the period provided for by the agreement.

Treating this transaction, therefore, as a loan or advance of the money, to be repaid to the defendant, the question presented is whether it did provide or intended to provide for the payment of a greater sum or greater value for the loan or forbearance of any money above 6 per cent. per annum. The money was repayable on the death or remarriage of the plaintiff's mother, and she was then upwards of 63 years of age, and, if she did not remarry, her death was certain to occur at some future period. The payment of the money was assured, and the repayment of this sum of money on the happening of the contingency was also assured. The plaintiff's mother had an expectation of life of about 13 years; and, if she lived out that period, the amount received by the defendant would be largely in excess of the interest allowed by statute. There was, of course, the possible contingency that she would live longer than the expectation of life; but it was early determined by the courts of England that such a possibility would not take the case out of the statute prohibiting usury. In Burton's Case, 3 Coke's Rep. 139, it was resolved by the whole court that if it had been agreed between the grantor and the grantee that, notwithstanding such power of redemption, the £100 should not be paid at the day, and that the clause of redemption was inserted to make an evasion out of the statute, then it had been a usurious bargain and contract within the statute, but, if in truth the contract be usurious against the statute, no colors or show of words will serve, but the party may show it, and shall not be concluded or estopped by any deed, or any other matter whatsoever; for the statute gives averment in such case. And Popham, Chief Justice, said:

"If A. comes to B. to borrow £100, B. lends it to him if he will give him for the loan of it for a year £20 if the son of A. be then alive. This is usury within the statute, for, if it should be out of the statute for the incertainty of the life of A., the statute would be of little effect, and by the same reason that he may add one life he may add many, and so like a mathematical line, which is divisible in semper divisibilia.

In Colton v. Dunham, 2 Paige, 267, the Chancellor said:

"The English as well as the American reports are filled with cases arising out of the various devices and expedients which have been adopted to evade the provisions of the statutes which limit the rate of interest to be received on the loan or forbearance of money. But on examination it will be found there is a uniform and settled principle running through all these cases, with scarcely any exceptions. Wherever by the agreement of the parties a premium of profit beyond the legal rate of interest, for a loan or advance of money, is either directly or indirectly secured to the lender, it is a violation of the statute unless the loan or advance is attended with some contingent circumstance by which the principal is put in evident hazard. A contingency merely nominal, attended with little or no hazard to the principal of the

money loaned or advanced, cannot alter the legal effect of the transaction. * * * Where there is a negotiation for a loan or advance of money, and the borrower agrees to return the amount advanced in all events, it is a contract of lending within the spirit and meaning of the statute. And whatever shape or disguise the transaction may assume, if a profit beyond the legal rate of interest is intended to be made out of the necessities or improvidence of the borrower, or otherwise, the contract is usurious."

If, therefore, this arrangement between the parties is to be construed as an absolute obligation on the part of the plaintiff that the sum of $19,000 should be repaid to the defendant as interest for the advance of the sum of $15,500, I think it clear that the contract would be within the statute, and the whole transaction and the instruments delivered under it void. Treating this, however, as an advance by the defendant of the sum of $15,500 at the time of the execution of these instruments, and without any express agreement as to the rate of interest, the law would imply that the defendant would have the right to interest on the amount loaned or advanced at the rate of 6 per cent. per annum. The alleged assignment of the $34,500 to be paid out of the plaintiff's interest in his father's estate, secured as it was by the bond and mortgage executed by the plaintiff at the time of the transaction, may, I think, be treated as an arrangement to secure to the defendant the repayment of the advances made, and thus in the nature of a mortgage or pledge of the plaintiff's securities to insure the repayment of such advances. As before stated, there is no express agreement by the plaintiff to pay any sum of money as interest. It is to receive an advance of a sum of money; and, to secure the repayment of that advance, a mortgage or pledge was given of his interest in his father's estate, and, if the attempted transfer of the $34,500 be read in connection with the other instruments executed by the plaintiff at the same time, it all could be treated as a mortgage or pledge to secure the repayment to the defendant of the advances made with interest. The amount fixed in the so-called transfer of $34,500 could be treated as a penalty. While it was undoubtedly the intention of the defendant to secure to itself the payment of the whole sum of $34,500 upon the death or remarriage of the plaintiff's mother, the form of the instruments that were executed does not in terms carry out that intention, and I think it may well be treated as a pledge or mortgage to secure to the defendant what it was legally entitled to recover, which would be the sum advanced with legal interest thereon.

The complaint alleges that these indentures and instruments were made, executed, and delivered by the plaintiff to the defendant, to be held by it only as security for the purpose of securing payment to the defendant of the said sum of $15,500, with interest thereon to the date of payment, and that it was understood and agreed by the parties that said indentures or instruments were made, executed, and delivered only as such security, and not as any absolute assignment, transfer, or conveyance of any definite property, interest, legacy, or distributive share of the said estate; that on the 6th of February, 1911, the plaintiff duly tendered to the defendant the said sum of $15,500, with interest at 6 per cent. from the 4th day of March, 1909, but the said defendant declined said offer, and the plaintiff demands judgment, in

the alternative, either that the judgment declare that the loan of $15,-500 was made as a result of a usurious and void contract, and that the same be adjudged and decreed to be invalid, or that the alleged indenture or instrument of assignment, transfer, or conveyance may be declared and adjudged to have been and to be a mortgage, and that it and also said alleged indenture of mortgage were given only as collateral security for the payment of said indebtedness of $15,500, with legal interest thereon, that the defendant be directed to receive and accept said sum of money with legal interest thereon as ascertained, and that the instruments be canceled. We think the plaintiff would be clearly entitled to this latter relief; and, accepting these instruments as mortgages or pledges of property as collateral security for the repayment of the loan, the plaintiff would be entitled to a judgment that the alleged transfer was as security for the repayment of the said sum of $15,500 loaned to the plaintiff, and, upon payment of that sum with interest, that the defendant deliver up the instruments received by it, and that the same be canceled of record.

This would result in a reversal of the judgment appealed from. If either of the parties requires a new trial, one will be directed; but, if a new trial be waived, judgment upon this appeal can be entered according to this opinion.

McLAUGHLIN and SCOTT, JJ., concur. DOWLING, J., dissents.

CLARKE, J. I concur in the result upon the ground that the legal effect of the transaction amounted to an equitable mortgage.