S. Samuel Di Falco, S.
These four separate actions against the administratrix c.t.a. which have been tried by the court arise out of transactions between decedent and plaintiff’s predecessors in interest (hereinafter called original assignees) in 1959 and 1960 and relate to the decedent’s remainder interest in one half of the principal of a testamentary trust created by his father.
In a prior decision involving the father’s estate, this court held that the decedent’s remainder interest was vested and that the purported assignments of the principal were void and unenforceable because the will provided that the remainder was inalienable. This decision was affirmed by the Appellate Division and the Court of Appeals. (Matter of Vought, 57 Misc 2d 396, affd. 30 A D 2d 805, affd. 25 N Y 2d 163, mot. for irearg. den. 25 N Y 2d 959.) Thereafter plaintiffs instituted these four actions in Supreme Court, New York County, which now have been transferred to this court upon motion by the estate. In all of the actions plaintiffs sought the identical relief, viz: to impress a trust upon 'the remainder interest payable to decedent’s estate; for damages for breach of contract, and for restitution. This court granted motions by the estate to dismiss the first cause of action in all of the complaints which sought to impress a trust, but denied the motions to dismiss and for summary judgment as to the remaining causes of action for breach of contract and restitution. (Matter of Vought, 70 Misc 2d 781, adhered to on rearg. N. Y. L. J., Oct. 12, 1972, p. 18, col. 3.)
The causes of action for breach of contract are based upon a provision in each of the instruments of assignment wherein decedent agreed that if the sum assigned “is paid to me by operation of law or by reason of the trustee’s refusal or failure to pay the said sum directly to the said assignee or its successors or assigns, or if for any reason whatsoever the said sum shall come into my hands, then and in such case, I shall hold the same in trust for the benefit of said Assignee, and forthwith pay the said sum over to it without further demand or direction.”
The court, after examining New York law, that of other jurisdictions, as well as opinions of eminent authorities, held that there exist causes of action to recover damages for breach of contract based upon decedent’s personal obligation to pay over the fund. The court did not hold that a cause of action exists for specific performance or that the agreement may be treated as a lien against the assigned property, but only that the cause of action is to recover damages for breach of the decedent’s promise. To enforce specific performance or to *757 attach a lien to the trust property in this situation, would completely nullify the spendthrift provisions in the father’s will (cf. Kelly v. Kelly, 11 Cal. 2d 356).
The court pointed out, however, that there is a question as to whether, under our public policy, such a promise should be enforceable and also whether the defenses of usury, fraud and unconscionable contract preclude such enforcement. The matter has now been tried before the court.
It is undisputed that decedent executed instruments purporting to be bills of sale and assignments of his remainder interests which all contained his personal obligation as follows:
(a) On October 27, 1959 to Inheritance Estates Ltd. in the sum of $450,000;
(b) On October■ 27, 1959 to Allied Investment and Discount Corp. in the sum of $150,000 subject to the prior assignment;
(c) On January 8,1960 to Lex Co., Inc. in the sum of $500,000 subject to the prior two assignments (which was reassigned to Leonard P. Levy) and
(d) On August 11,1960 to Leonard P. Levy, all of his remaining interest in the principal subject to all three prior assignments.
There was evidence that decedent was, at the time of these transactions, an alcoholic suffering from chronic relapsing pancreatitis and diabetes and was addicted to the use of drugs as a result of the suffering caused by this condition. It further appears from this evidence that these conditions caused some impairment of judgment, and that he was at the worst point physically at the time of the transactions. He had been in the hospital for a four-day period ending October 23, 1959, saw his physician on the 26th and was back in the hospital on the 31st of October just four days after the execution of the documents. Decedent’s financial circumstances were no better than his physical and mental condition. He was in the words of one witness in “ desperate financial straits ” being pressed by creditors and by his wife for alimony and child support. He had previously tried unsuccessfully to borrow against the estate.
Robert I. Morris, an attorney from Philadelphia, was the individual who introduced decedent to Samuel Cohen, also of Philadelphia. Cohen was the broker who arranged these agreements and who was also a principal stockholder of Allied Investment and Discount Corp., one of the original assignees. Morris was a lodge brother of Cohen. Cohen and the other original assignees had been in the business .of making loans upon estate interests for many years and had wide experience in this area. *758 At the time of the agreements, the market value of one half of the trust principal was over $900,000 and was invested in diversified high grade stocks and bonds. The original assignees had acquired information as to these matters prior to execution of the assignments.
It appears that there was little, if any, bargaining involved in the actual transaction. Whatever offer was made, decedent accepted in light of his financial condition and the restrictions of the spendthrift clause in -his father’s will. Morris purportedy represented the decedent in the transaction. His advice to decedent seems to have been limited to the necessity for decedent to obtain money.
While the decedent’s interest was valued at $900,000, it was subject to a life estate. The life income beneficiary, decedent’s mother, was 62 years old at the time of the assignments. She was a frail, petite woman who was not very healthy and was obviously very much affected by her son’s condition. An actuarial expert testified that according to the 1959 mortality table published by the Department of Commerce, her life expectancy was 17.8 years, and that it was 14.78 years under the commission’s standard ordinary table (C.-S.O.). The actuary testified that the present value in 1959 o.f a $450,000 fund based on 6% interest and a life expectancy of 17.8 years was $159,457 and that the present value of a $600,000 fund based on the same interest and life expectancy was $212,729. While the Court of Appeals has held in Hartley v. Eagle Ins. Co. (222 N. Y. 178), that mortality tables are only slight evidence of life expectancy, the evidence in this case as to the life income beneficiary’s actual physical and mental condition supports the conclusion that her actual life expectancy viewed at that time was in the area of 17 years. It is noteworthy that the life income beneficiary actually died six years after the execution of the assignments.
The testimony offered on behalf of the plaintiff was that $66,000 was paid for the assignments of $450,000. It appears, however, that checks totaling only $61,000 were payable to decedent. The court finds that these checks were not indorsed by decedent but were signed by someone else and deposited in Morris ’ trustee account. From these moneys, $6,000 was paid to Cohen as a broker’s fee. His was a dual role as broker and agent of the original assignees; $500 was used to form Lex Co., a corporation used by the assignees to act as assignee of the third assignment, and that $500 was paid to Morris and Cohen as reimbursement for alleged cash advances which were not proven. It appears that the actual consideration paid to Vought *759 or in his behalf was in the area of $54,000. The court cannot exactly determine from the evidence what amount was actually received by decedent or paid on his behalf. An amount of approximately $24,500 was paid to decedent’s creditors and a $2,000 fee was paid to Morris as attorney’s fee and the balance was purportedly advanced to decedent and deposited to his account. Morris, however, could not give a breakdown .of any advancements nor produce any canceled checks. Plaintiffs were unable to establish by competent and credible testimony or by documentary proof whether any amounts were paid for the remaining assignments.
Upon consideration of all of the evidence the court is of the opinion that at least the first two and that possibly all of these agreements were but .one transaction and supported by the one consideration. The court has difficulty understanding how these original assignees, aware as they were of possible litigation over the spendthrift clause, could have destroyed any documentary proof that would support the consideration paid for these last three assignments. In any event inasmuch as no consideration was established for the last two agreements, upon which the Colligan action is based, that cause of action for breach of contract must be dismissed. (Matter of Gurlitz, 105 Misc. 30, mod. sub nom. Matter of Lynde, 175 N. Y. S. 289, affd. 190 App. Div. 907; 1 Scott, Trusts [3d ed.], § 86.1.) The cause of action for restitution contained in that action was dismissed upon the motion made at the conclusion of the trial.
The court is also of the opinion that the causes of action for breach of contract based upon the first two agreements, which the court finds actually constituted one transaction, must also be dismissed. As the court pointed out in its prior decision, the authorities who support the theory of a cause of action based upon the personal promise to pay over the remainder contained in a void assignment, also support the principle that a court should grant relief only if adequate consideration was given and if it was a fair agreement (Matter of Vought, 70 Misc 2d 781, 787, supra). It would appear that the reasoning underlying this proposition is that an assignee is not likely to pay much for an assignment if there is a fair chance that it will never be paid to him, and if that is the basis of the bargain, it would be unjust to enforce it as a contract to pay the full amount. This reasoning is especially applicable to the facts in this case since all of the parties to the transaction were aware of the spendthrift provision contained in the father’s will and purportedy executed the agreements under the impres *760 sion that they were assignments. The testimony of1 the original assignees was that the transaction was risky and a gamble and they sought to explain the extremely small consideration paid upon this theory. Cohen, Levy, and their attorney Boket, however, had used the quoted language in other transactions and were clearly aware of its effect. (See De Korwin v. First Nat. Bank of Chicago, 170 F. Supp. 112, affd. 275 F. 2d 755, cert. den. 364 U. S. 824; De Korwin v. First Nat. Bank of Chicago, 318 F. 2d 176.) The effect of the written provision inserted in all of the agreements is to remove any risk. Thus the sum total of the transaction is that the original assignees on the one hand offered decedent a small sum upon the basis that the transaction amounted to a gamble, and on the other hand inserted a provision which in effect removed that risk. No bargaining took place at this time as to the terms of the agreements and decedent, who was in a destitute condition, was given the documents, which were prepared by an attorney who was not present and he signed them. It is entirelv probable that decedent would have and did in fact sign whatever documents were offered to him as being necessary to the realization of the desired amounts of money. While the documents may have been read to him by Morris, he was not fully apprised of his legal rights and the complete nature of these agreements. The court finds that this was not an arm’s length transaction, but smacks of over-reaching upon the part of the original assignees, and it cannot be said that decedent had independent legal representation. The court, therefore, holds that where there is a restriction in a will against 'assignment of the principal of a testamentary trust, rendering any assignment void, it will not enforce the assignment as an independent contract to pay over the principal on receipt, where as here there exists a gross inequality of the bargaining power, wide disparity or knowledge and experience, economic duress" or necessity, and a gross inadequacy of consideration. While in the case at bar, there is no positive evidence of fraud, yet the inequality of the bargain, insofar as the agreements are to be considered as independent personal contracts, is so gross that the court cannot resist the inference that it was improperly obtained and is unconscionable (see Dunn v. Chambers, 4 Barb. 376; Friedman v. Kirsch, 63 Hun 630, opn. in 18 N. Y. S. 85; 1 Corbin, Contracts [3d ed.], § 128, p. 551). In Dunn the court did not declare the transaction void because there were extenuating circumstances, namely, the interest sold was a life estate and there was a risk that it would *761 soon terminate. No such, extenuating circumstances exist in this case.
The remaining causes of action are for restitution. The court pointed out in the prior decision that although the amount of money sought is the same, there appear to he two theories for restitution pleaded, one based on the void assignments and the other based upon the decedent’s personal obligation. (Matter of Vought, 70 Misc 2d 781, 789, supra.) Insofar as the void assignments are concerned the original assignees advanced money to the decedent purportedy relying on their gamble as to the assignments and knowingly assumed the risk as to the validity and effect of the spendthrift clause. The evidence establishes that this was the basis of the assignments. The causes of action for restitution based upon the assignments must therefore be dismissed.
“ Where the parties know that there is doubt in regard to a certain matter and contract on that assumption, the contract is not rendered voidable because one is disappointed in the hope that the facts accord with his wishes. The risk of the existence of the doubtful fact is then assumed as one of the elements of the bargain.” (Restatement, Contracts, § 502, subd. f, p. 964; cf. Sears v. Grand Lodge A. O. U. W., 163 N. Y. 374.) The Court of Appeals in considering these assignments very aptly pointed out that “ the assignees suffer no loss greater than that for which they bargained on the face of1 the instruments with which they were dealing.” (Matter of Vought, 25 N Y 2d 163, 174.)
To now order restitution upon the contract cause of action, which the court will not enforce, would amount to relieving the original assignees from their bargain. Moreover, restitution should not be granted to persons, who, with respect to the transaction in question, have been guilty of seriously wrongful conduct or have sought to take advantage of the other party by sharp practice or other unconscionable conduct. (Restatement, Restitution, § 140, subd. a; 50 N. Y. Jur., Restitution, § 45, p. 243.) In any event the original assignees were fully aware at the time of the transactions that a major part of the consideration would be immediately used to pay decedent’s creditors and that he would dissipate the rest. To grant restitution at this time would clearly be inequitable since the estate and more particularly, decedent’s wife and children would be compelled to pay, not with any funds they received from decedent, but with the money payable to them from the trust. The net result *762 would be to divert a portion of the remainder interest into the hands of the plaintiffs.
The .court is of the further opinion that the agreements as personal contracts are void in any event as being usurious. (General Obligations Law, § 5-511 (formerly General Business Law, § 375.) (Cf. De Korwin v. First Nat. Bank of Chicago, 275 F. 2d 755, cert. den. 364 U. S. 824, dealing -with a provision in an assignment containing substantially the same language.) None of the parties herein contend that the law of any .other jurisdiction applies and on the contrary they all rely upon New York law. It appears from the evidence that these agreements were made with reference to the law of this jurisdiction. (See Jewell v. Wright, 30 N. Y. 259.)
The assignments are void and these actions are based solely upon the decedent’s promises to pay over his remainder interest. If the agreements are taken literally, then the actual effect of the transaction is that a small sum of money was advanced to decedent and the original assignees were absolutely assured of repayment of a much more -substantial amount. Viewed in this light, there was no risk or hazard as to payment of both principal and interest or profit. The original assignees knew that the remainder interest was vested and they decided that no life insurance on decedent’s life was necessary. They were also aware that the trust principal was safely invested in the hands of a competent trustee. The only question concerned the time of repayment and as previously mentioned the reasonable view of the life expectancy of the income beneficiary at that time was 17 years although -she actually lived 6 years.
In dealing with the question of usury, the Court of Appeals stated in Hartley v. Eagle Ins. Co. (222 N. Y. 178, 184-185, supra): ‘ ‘ that an agreement to pay an amount which may be more or less than the legal interest, depending upon a reasonable contingency, is not ipso facto usurious, -because of the possibility that more than the legal interest will be paid. Otherwise no valid transfer or assignment of an interest dependent upon a life estate could be made for less than the full value. Such arrangements, however, will not be upheld in any case where the purpose is to evade the statutes against usury, -no matter what form the transaction may take. (Meaker v. Fiero, 145 N. Y. 165; Quackenbos v. Sayer, 62 N. Y. 344; Birdsall v. Patterson, 51 N. Y. 43.) The question in each case is, and necessarily must be, whether the agreement be -fair and reasonable, or a mere device to evade the usury statutes.”
*763 The plaintiffs argue that no question of usury is present and contend that the numerous affidavits executed by decedent conclusively establish that the transactions were sales and not loans. The court, as expressed in Wetzlar v. Wood (143 App. Div. 311, 316) is not bound by the form of the transaction: “Legitimate transactions are conducted with more directness and without being bolstered up by affidavits. * * * The documents themselves furnish strong internal evidence that they were mere covers for usurious loans, and, even if there was a doubt as to whether the transaction was a purchase and sale or a loan, its unconscionable character should resolve that doubt in favor of a loan.”
In determining whether an agreement is usurious the Court of Appeals in Hartley stated (p. 187): “ the question is did the parties intend to evade the usury statutes of the state, or was the interest payable so large that, in view of all the circumstances, an intent to provide for the payment of interest beyond the legal rate will necessarily be imputed to them! (Fiedler v. Darrin, 50 N. Y. 437.)” In Hartley the court considered the amount which the assignor was obligated to pay as only slightly in excess of legal interest and ordered a new trial upon the question of the existence of a specific intent by parties to evade the usury laws. Hartley was followed by Brown v. Robinson (224 N. Y. 301) where the Court of Appeals again regarded the amount involved as exceeding legal interest by a “ comparatively small amount ”. Hartley and Brown, therefore, are quite different from the facts in tp.e case at bar. Here the amount paid equals less than 10% of the amount ultimately agreed to be repaid and approximately 25% of the present value of the remainder interest and the court is of the opinion that a usurious intent must be imputed to the parties. (Fiedler v. Darrin, 50 N. Y. 437; De Korwin v. First Nat. Bank of Chicago, 275 F. 2d 755, supra.) The amount payable herein was so large that it would have exceeded the legal rate even if the life income beneficiary had lived for a period beyond her expectancy under the mortality tables. (Cf. Hartley v. Eagle Ins. Co., supra.)
There is also present in this case evidence of a specific intent to evade the usury statutes in that Cohen testified that he computed interest at 10% and based the life expectancy at 22 years in order to arrive at the consideration paid.
The case of Bullock v. Becker (52 Misc 2d 698, affd. 27 A D 2d 647, leave to app. den. 19 N Y 2d 581), relied upon by plaintiffs to support their contention that the agreements were not usurious is distinguishable since in that case there was no per *764 sonal obligation to pay over the principal and the agreements resulted from an arm’s length transaction.
While there are cases which have held assignments of this nature usurious but ¡which have not decreed forfeiture of both principal and interest based upon equitable principles (see Hall v. Eagle Ins. Co., 151 App. Div. 815, affd. 211 N. Y. 507; Leavitt v. Enos, 155 App. Div. 584; Matter of Reif, 30 N. Y. S. 2d 47; De Korwin v. First Nat. Bank of Chicago, 275 F. 2d 755, supra), none of these cases dealt with the enforcement of a void assignment as a personal contract of the assignor. The courts in the cited cases treated the assignments as equitable mortgages, did not enforce them but directed the assignor to pay back the amounts loaned with legal interest. In the case at bar there was no intent to regard the assignments as security for the advances, since the parties were aware of the spendthrift provision. The assignments are void and the present actions are based solely upon the promise to pay over a usurious sum of money. This is exactly what the statute is supposed to prevent.
Since the agreements are void in their entirety, the plaintiffs as successors in interest to the original assignees possess no better rights than the original assignees possessed (Miller v. Zeimer, 111 N. Y. 441; Sabine v. Paine, 223 N. Y. 401). There is no question ,of estoppel present in this case based upon decedent’s personal obligation to pay over the remainder interest. While decedent may have executed certain affidavits attesting to the fact that he sold his remainder interests, there has been no showing that the plaintiffs placed any reliance upon these affidavits nor that they considered these agreements as anything other than assignments.
(Submit separate decrees on notice providing for dismissal of the complaints in each of the four separate actions.