GAIL A. WATERS *vs.* MIN LTD. & others.[1]

Essex. November 5, 1991. - February 27, 1992.

Present: LIACOS, C J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Contract*, Unconscionability.

Discussion of the doctrine of unconscionability. [66-68]

In an action to rescind a contract for purchase of an assignment of an annuity, the evidence supported the judge's conclusion that the contract was unconscionable, and the judge correctly ordered that the annuity be returned to the plaintiff on repayment of the amount of money the plaintiff had received from the defendants under the contract. [68-70]

CIVIL ACTION commenced in the Superior Court Department on February 10, 1989.

The case was heard by *J. Harold Flannery*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*James J. McNulty* for the defendants.

*Nicholas J. Decoulos* for the plaintiff.

LYNCH, J. This case arises from a contract between Gail A. Waters (plaintiff) and "the DeVito defendants"[2] (defendants), whereby the plaintiff was to assign her annuity policy having a cash value of $189,000 to the defendants in ex-

---

[1] Cube Ltd., Robert A. DeVito, David A. DeVito, and Michael D. Steamer. The defendants Commercial Union Insurance Company and Thomas Beauchemin did not appeal from the judgment.

[2] The judge referred to the defendants Min Ltd., Cube Ltd., David A. DeVito, Robert A. DeVito, and Michael D. Steamer, collectively as "the DeVito defendants" because their identities and roles were not made clear at trial. The plaintiff originally agreed to assign her rights and interest in a certain annuity policy to Cube Ltd., which later transferred all its interest in the annuity to Min Ltd. David A. DeVito is president of Cube Ltd. Michael D. Steamer is business manager of Min Ltd. Robert A. DeVito conducted negotiations with the plaintiff regarding the annuity policy.

change for $50,000. The plaintiff brought suit to rescind the contract on the ground of unconscionability. Defendant Min Ltd. counterclaimed seeking declaratory relief and specific enforcement of the contract. A Superior Court judge, sitting without a jury, found for the plaintiff, ordered that the annuity be returned to the plaintiff on repayment of $18,000 with interest, and dismissed the counterclaim of Min Ltd. The defendants appealed and we took the matter on our own motion. We now affirm the judgment.

We summarize the relevant facts from the judge's findings. The plaintiff was injured in an accident when she was twelve years old. At the age of eighteen, she settled her claim and, with the proceeds, purchased the annuity contract in question from the defendant Commercial Union Insurance Company. When the plaintiff was twenty-one, she became romantically involved with the defendant Thomas Beauchemin, an ex-convict, who introduced her to drugs. Beauchemin suggested that she sell her annuity contract, introduced her to one of the defendants, and represented her in the contract negotiations. She was naive, insecure, vulnerable in contract matters, and unduly influenced by Beauchemin. The defendants drafted the contract documents with the assistance of legal counsel, but the plaintiff had no such representation. At least some portions of the contract were executed in unusual circumstances: i.e., part of the contract was signed on the hood of an automobile in a parking lot, part was signed in a restaurant. The defendants agreed to pay $50,000 for the annuity policy which would return to them as owners of the policy $694,000 over its guaranteed term of twenty-five years, and which had a cash value at the time the contract was executed of $189,000.

Beauchemin acted for himself and as agent of the defendants. For example, the defendants forgave a $100 debt of Beauchemin as deposit for the purchase of the annuity policy. From a subsequent $25,000 payment, the defendants deducted $7,000 that Beauchemin owed them.

Based on the foregoing, the judge found the contract unconscionable.

The defendants contend that the judge erred by (1) finding the contract unconscionable (and by concluding the defendants assumed no risks and therefore finding the contract oppressive); (2) refusing them specific performance; and (3) failing to require the plaintiff to return all the funds received from them.

1. *Unconscionability.* The defendants argue that the evidence does not support the finding that the contract was unconscionable or that they assumed no risks and therefore that the contract was oppressive. "[W]e may not set aside findings of fact 'unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses.' Mass. R. Civ. P. 52 (a), 365 Mass. 816 (1974)." *First Pa. Mortgage Trust* v. *Dorchester Sav. Bank*, 395 Mass. 614, 621 (1985). Also, we may not reverse the judge's findings or conclusions if they are not tainted by an error of law. See *Blackwell* v. *E.M. Helides, Jr., Inc.*, 368 Mass. 225, 226 (1975).

The doctrine of unconscionability has long been recognized by common law courts in this country and in England. See *Banaghan* v. *Malaney*, 200 Mass. 46 (1908); *Boynton* v. *Hubbard*, 7 Mass. 112 (1810); *Kleinberg* v. *Ratett*, 252 N.Y. 236 (1929); *Campbell Soup Co.* v. *Wentz*, 172 F.2d 80 (3d Cir. 1948); 14 S. Williston, Contracts § 1632 (3d ed. 1972), and cases cited; Leff, Unconscionability and the Code — The Emperor's New Clause, 115 U. Pa. L. Rev. 485, 531-533 nn.184-202 (1967). "Historically, a [contract] was considered unconscionable if it was 'such as no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other.' *Hume* v. *United States*, 132 U.S. 406[, 411] (1889), quoting *Earl of Chesterfield* v. *Janssen*, 38 Eng. Rep. 82, 100 (Ch. 1750). Later, a contract was determined unenforceable because unconscionable when 'the sum total of its provisions drives too hard a bargain for a court of conscience to assist.' *Campbell Soup Co.* v. *Wentz*, 172 F.2d 80, 84 (3d Cir. 1948)." *Covich* v. *Chambers*, 8 Mass. App. Ct. 740, 750 n.13 (1979).

The doctrine of unconscionability has also been codified in the Uniform Commercial Code (code), G. L. c. 106, § 2-302 (1990 ed.),[3] and, by analogy, it has been applied in situations outside the ambit of the code. See, e.g., *Zapatha* v. *Dairy Mart, Inc.*, 381 Mass. 284, 291 (1980) (termination clause in franchise agreement not considered unconscionable); *Commonwealth* v. *DeCotis*, 366 Mass. 234, 242 (1974) (extraction of resale fees for no rendered services deemed unfair act or practice under G. L. c. 93A, § 2 [*a*]). See also *Meehan* v. *New England School of Law*, 522 F. Supp. 484, 494 (D. Mass. 1981) (applying *Zapatha* and concluding contract clause waiving tenure rights not unconscionable because plaintiff attorney carefully negotiated clear, easily identifiable language in clause); *Scheele* v. *Mobil Oil Corp.*, 510 F. Supp. 633, 637 (D. Mass. 1981) (relying on *Zapatha* to deny defendant's motion to dismiss where motion claimed code related only to sale of goods and not mutual termination agreements). As explained in *Bronstein* v. *Prudential Ins. Co.*, 390 Mass. 701, 708 (1984), "[in *Zapatha*] the court applied statutory policy to common law contract issues, which, for centuries have been within the province of this court." Accordingly, although we are not here concerned with a sale of goods or a commercial transaction, *Zapatha* is instructive on

---

[3]General Laws c. 106, § 2-302 (1990 ed.), reads as follows:

"§ 2-302. Unconscionable Contract or Clause.

"(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

"(2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose, and effect to aid the court in making the determination."

The standards of determining a contract unconscionable set forth in G. L. c. 106, § 2-302, are the same standards expressed in Restatement (Second) of Contracts § 208 (1981). "The issue is one of law for the court, and the test is to be made as of the time the contract was made." *Zapatha* v. *Dairy Mart, Inc.*, 381 Mass. 284, 291 (1980).

the principles to be applied in testing this transaction for unconscionability.

Unconscionability must be determined on a case-by-case basis, with particular attention to whether the challenged provision could result in oppression and unfair surprise to the disadvantaged party and not to allocation of risk because of "superior bargaining power." *Zapatha, supra* at 292-293. Courts have identified other elements of the unconscionable contract. For example, gross disparity in the consideration alone "may be sufficient to sustain [a finding that the contract is unconscionable]," since the disparity "itself leads inevitably to the felt conclusion that knowing advantage was taken of [one party]." *Jones* v. *Star Credit Corp.*, 59 Misc. 2d 189, 192 (N.Y. Sup. Ct. 1969). See, e.g., *Matter of Friedman*, 64 A.D. 2d 70, 85 (N.Y. 1978) (contract unconscionable because art dealer's "consideration" inadequate where widow conveyed more than 300 works of art to dealer and received neither the payment of purchase price nor right to receive a fixed price within a definite time, only dealer's promise of payment if and when sales made); *Nelson* v. *Nelson*, 57 Wash. 2d 321, 323-324 (1960) (contract found unconscionable where defendant agreed to exchange equity in her property — worth more than $4,750 — for equity in the plaintiff's property valued at $2,750). High pressure sales tactics and misrepresentation have been recognized as factors rendering a contract unconscionable. *Industralease Automated & Scientific Equip. Corp.* v. *R.M.E. Enters., Inc.*, 58 A.D. 2d 482, 488-490 (N.Y. 1977). If the sum total of the provisions of a contract drive too hard a bargain, a court of conscience will not assist its enforcement. *Campbell Soup Co., supra* at 84.

The judge found that Beauchemin introduced the plaintiff to drugs, exhausted her credit card accounts to the sum of $6,000, unduly influenced her, suggested that the plaintiff sell her annuity contract, initiated the contract negotiations, was the agent of the defendants, and benefited from the con-

tract between the plaintiff and the defendants.[4] The defendants were represented by legal counsel; the plaintiff was not. See *Zapatha, supra* at 294. The cash value of the annuity policy at the time the contract was executed was approximately four times greater than the price to be paid by the defendants. For payment of not more than $50,000 the defendants were to receive an asset that could be immediately exchanged for $189,000, or they could elect to hold it for its guaranteed term and receive $694,000. In these circumstances the judge could correctly conclude the contract was unconscionable.

The defendants assumed no risk and the plaintiff gained no advantage. Gross disparity in the values exchanged is an important factor to be considered in determining whether a contract is unconscionable. "[C]ourts [may] avoid enforcement of a bargain that is shown to be unconscionable by reason of gross inadequacy of consideration accompanied by other relevant factors." 1 A. Corbin, Contracts § 128, at 551 (1963 & Supp. 1991). Moreover, an unconscionable contract is "such as no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other." *Hume* v. *United States*, 132 U.S. 406, 411 (1889), quoting *Earl of Chesterfield* v. *Janssen, supra.* See *In re Estate of Vought*, 76 Misc. 2d 755 (N.Y. Sur. Ct. 1973) (assignment of interest in spendthrift trust for $66,000 under provisions which guaranteed assignees ultimate return of $1,100,000).

We are satisfied that the disparity of interests in this contract is "so gross that the court cannot resist the inference that it was improperly obtained and is unconscionable." *In re Estate of Vought, supra* at 760.

---

[4]These latter two findings were grounds enough for the judge to rescind the contract. See 1 H.C. Black, Rescission of Contracts § 32 (2d ed. 1929), and cases cited. The plaintiff relied on Beauchemin to represent her in the contract negotiations. Accordingly, he was obligated to act on her behalf and in her interest. *Id.* Instead, he acted in his own self-interest and caused benefits to inure to himself by having his debts forgiven and requiring he be named beneficiary of the annuity policy.

2. *Amount of repayment order.* The defendants also argue that the judge erred in failing to require the plaintiff to return the full amount paid by them for the annuity.[5]

The judge's order was consistent with his findings that Béauchemin was the agent of the defendants, and that the plaintiff only received $18,000 for her interest in the annuity.

*Judgment affirmed.*

---

[5]The defendants paid $18,000 cash after deducting $7,000 for a debt which was owed to them by Beauchemin. The remaining $25,000 due on the contract was never paid.