Whitehead, J.
Plaintiff Alpha One (“Alpha”) brings this action alleging breach of contract (Count I) and negligence (Count II) on account of NYNEX Information Resources Company's (NIRC’s) alleged failure to place the plaintiffs advertisements in a number of different yellow pages directories. This action is currently before the court on the defendants’ motion for summary judgment on Count II of the complaint and partial summary judgment on Count I of the complaint. For the reasons outlined below, the defendants’ motion is ALLOWED. The court further orders that summary judgment issue in the plaintiffs favor on the remainder of Count I and orders that the defendants pay damages in the amount of $1,332.00.
BACKGROUND
Joseph Borsini (“Borsini”) is the president of Alpha One Limousine Services, Inc. (“Alpha”), a New Hampshire corporation. Borsini runs Alpha out of his home at 66 Highland Road in Newton, New Hampshire. Borsini had started Alpha in 1989 with one car and, in that same year began running advertisements in the Haverhill and Lawrence yellow pages.
In 1990, in an attempt to expand his business, Borsini purchased Jacqueline’s Limousine Service in Exeter, New Hampshire. Later that year, Borsini was contacted by Joseph Keleher (“Keleher”), who was selling advertising space for NIRC in the 1991-1992 Yellow Pages.
On November 29, 1990, Keleher went to Borsini’s business/home address so that Borsini could sign the contracts for the ads he was seeking to place in the 1991-1992 directories. Borsini signed a number of identical contracts to place ads in the Portsmouth, Lawrence, Haverhill and Manchester Yellow Pages. The advertisement in the Manchester Yellow Pages cost Borsini a total of $480; the advertisement in the Portsmouth Yellow Pages cost Borsini $852. Borsini had taken out the additional advertisements in an attempt to capitalize on the good will of Jacqueline’s Limousine.
On the front of each of the contracts, directly to the left of the signature line, was the following sentence printed in all capital letters:
THE APPLICANT HAS READ AND UNDERSTANDS ALL OF THE TERMS AND CONDITIONS ON THE REVERSE SIDE AND AGREES TO BE BOUND BY SAID TERMS AND CONDITIONS. (Emphasis in original.)
The reverse side of the contract contained the contracts’ terms and conditions. Section 9 of those terms and conditions, which is at issue in this case, stands out as the only section on the page printed in all capital letters. Section 9 reads:
SECTION 9. LIMITATION OF LIABILITY OF THE COMPANY. IN THE EVENT OF ANY ERROR IN OR OMISSION OF ALL OR ANY PART OF A UNIT IN AN ISSUE OF THE DIRECTORY, LIABILITY SHALL BE LIMITED TO A PRO RATA ABATEMENT OF THE CHARGES PAYABLE FOR SUCH UNIT DURING THE ISSUE PERIOD OF THE DIRECTORY IN WHICH SUCH ERROR OR OMISSION OCCURS IN THE SAME PROPORTION THAT SUCH ERROR OR OMISSION REDUCES THE VALUE OFTHE ENTIRE UNIT IN SUCH DIRECTORY. IN NO EVENT SHALL THE COMPANY’S OR ANY AFFILIATE’S LIABILITY TO THE APPLICANT FOR ALL CLAIMS OF ANY TYPE OF DAMAGE ARISING OUT OF OR RESULTING FROM ANY SUCH ERROR OR OMISSION EXCEED THE TOTAL OF SUCH CHARGES PAYABLE FOR THE UNIT. IN NO EVENT SHALL THE COMPANY OR ANY AFFILIATE BE LIABLE FOR ANY *569 LOSS OF THE APPLICANT’S BUSINESS, REVENUES OR PROFITS, THE COSTTO THE APPLICANT OF OTHER FORMS OF ADVERTISING, OR SPECIAL, CONSEQUENTIAL, OR PENAL DAMAGES OF ANY NATURE. THE FOREGOING PROVISIONS SHALL APPLY TO THE FULL EXTENT PERMITTED BY LAW AND REGARDLESS OF WHETHER THE APPLICANT’S CLAIM IS BASED UPON CONTRACT, TORT (INCLUDING NEGLIGENCE OF WHATEVER DEGREE) STRICT LIABILITY OR OTHERWISE AND SHALL CONSTITUTE THE COMPANY’S AND ANY AFFILIATE’S SOLE LIABILITY TO THE APPLICANT AND THE APPLICANT’S EXCLUSIVE REMEDY AGAINST THE COMPANY AND ANY AFFILIATE IN THE EVENT OF SUCH ERROR OR OMISSION.
NEITHER THE COMPANY NOR ANY AFFILIATE WILL BE REQUIRED TO CORRECT ANY OMISSION OR ERROR IN ANY DIRECTORY PRIOR TO THE NEXT REGULARLY SCHEDULED PUBLICATION OF SUCH DIRECTORY, ORTO GIVE ANY SPECIAL NOTICE THEREOF OF ANY TYPE.
NIRC subsequently failed to print the advertisement in the Portsmouth directory and misidentified the plaintiffs address in the Manchester directory (identifying the address as Newton, Massachusetts as opposed to Newton, New Hampshire).[1]
The plaintiff alleges that, as a direct result of these errors and omissions, it suffered extensive business losses.
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact in dispute and where the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat'l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, “and [further,] that the moving party is entitled to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). “A complete failure of proof concerning an essential element of the non-moving party’s case renders all other facts immaterial” and mandates summary judgment in favor of the moving party. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 711 (1991) (citing Celotex v. Catrett, 477 U.S. 317, 322 (1986)).
Count II (The Negligence Claim)
The defendants have moved for summary judgment on Count II, in its entirety, arguing that the negligence count is barred by virtue of the provisions of Section 9 of the contract. They further move for partial summary judgment on Count I of the complaint arguing that the plaintiffs recovery is limited by virtue of Section 9 to $1,332.00.[2] Each of these arguments hinges on the enforceability of Section 9 of the contract. Alpha One has argued that the defendants’ motion must fail because Section 9 is unconscionable, as that concept is defined by the provisions of G.L.c. 106, §2-302, and is therefore unenforceable.
The court notes, at the outset, that the provisions of G.L.c. 106, §2-302 are technically inapplicable to this case. Section 2-302 is a portion of the Commonwealth’s Uniform Commercial Code. By its very definition, it applies only to a contract for the sale of “goods” and not, as is the case here, a contract for services. Even so, the “doctrine of unconscionability has ... by analogy . . . been applied in situations outside the ambit of the code.” Waters v. Min Ltd., 412 Mass. 64, 67 (1992) (and cases cited therein). Accordingly, even though the contract at issue falls outside the ambit of the Code, the principles articulated in the UCC provide a basis, by analogy, for the court’s decision.
The court next notes that the question of unconscio-nability is “one of law for the court.” Zapatha v. Dairy Mart, Inc., 381 Mass. 284, 291 (1980). “Unconscionability must be determined on a case-by-case basis . . . giving particular attention to whether, at the time of the execution of the agreement, the contract provision could result in unfair surprise and was oppressive to the allegedly disadvantaged party.” Id. at 293.
Although the Code has sometimes been criticized for providing only a vague definition of unconsciona-bilily, id. at 292, n. 11, the Supreme Judicial Court has recently stated that an unconscionable contract is “such as no man in his senses and not under delusion would make on the one hand, and no honest and fair man would accept on the other.” Waters, supra at 69 (citations omitted).[3] The Court has further held that the disparity of interests in the contract must be “so gross that the court cannot resist the inference that it was improperly obtained and is unconscionable.” Id.
The public policy considerations involved here are self-evident. On the one hand, the court should not unduly interfere with the right of the parties to freely enter into contracts. On the other hand, the court will not enforce a contractual provision which resulted in an “unfair surprise” to one of the parties or resulted in a patently unconscionable result. Zapatha, supra, at 293. See, generally, Alperin and Chase, supra.
Alpha One argues that, both as a matter of form and as a matter of substance, Section 9 is unenforceable. The court addresses each of these arguments.
The Substance of the Contract
Clearly the limitation of remedies contained in Section 9 of the contract is not per se unconscionable. Indeed, G.L.c. 106, §2-719 specifically provides that an:
agreement may . . . limit or alter the measure of damages recoverable ... as by limiting the buyer’s remedies to return of goods and repayment of the price . .. Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation or consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation *570 of damages where the loss is commercial is not. (Emphasis added).
Moreover, the Supreme Judicial Court has specifically held that contractual limitations such as the one contained in Section 9 of the contract are not unconscionable.[4] Deerskin Trading Post, Inc. v. Spencer Press Inc., 398 Mass. 118 (1986).
In Deerskin, the plaintiff had hired the defendant to produce catalogs with accompanying order forms for the plaintiff. The price quotation provided by the defendant included a limitation of damages clause which limited the plain tiffs remedy to a refund of the cost of the printing. Upon discovering that the order forms had been improperly glued into the catalogs, the plaintiff brought suit for breach of contract and negligence seeking, inter alia, damages for lost profits and argued that the limitation of damages clause was unconscionable. The Court noted that the unconscionability argument “merit(ed) little discussion” and held that “[l]imiting damages to a refund of the purchase price in the circumstances of this case, where the two parties are sophisticated business entities, and where consequential damages in the event of a problem could be extensive, is a reasonable business practice . . .” Id. at 124.
The only published decision within Massachusetts to specifically consider the limitation involved here as it relates to Yellow Pages contracts is Pupillo v. N.E. Telephone Co., 1980 Mass.App.Div. 40. While the Appellate Division’s decisions may not be binding on this court, the court finds it persuasive that the Pupülo court held an identical provision to be enforceable in similar circumstances. In so deciding, the Pupillo court was in accord with the vast majority of courts which have considered the same limitation in the context of Yellow Pages advertisements.[5] This court now adds its voice to the chorus of courts holding the provision enforceable.
The plaintiff argues, however, that even if the provision is not per se unenforceable, the circumstances of this particular case and the damages suffered by the plaintiff render the provision unconscionable as a matter of public policy. The court does not agree. Borsini casts the case as one involving an unsophisticated business person fighting a David-and-Goliath battle with a large utility. Certainly the disparity in the size of the parties affects the parties’ relative bargaining power, but a disparity in size alone does not make a contract unconscionable. The “principle [of uncon-scionability] is one of prevention of oppression and unfair surprise ... and not of disturbance of allocation of risks because of superior bargaining power.” Zapatha, supra, at 292 (quoting Official Comment 1 to U.C.C. §2-302). See also, Alperin and Chase, supra, §92 at 224-25. (“Thus the real villain is not the inequality of bargaining power itself, but the misuse of that power . . .") Moreover, the plaintiffs answers to interrogatories reveal that the plaintiff had signed at least seven contracts with New England Telephone for Yellow Pages advertising. Clearly, the plaintiff was not wholly inexperienced in this area.
The plaintiff also makes much of the fact that the contract was signed in Borsini’s home. The plaintiff, however, has stated that he ran his business out of his home. Accordingly, the fact that the contract was signed there adds nothing to the unconscionability argument. Moreover, the court assumes that the NIRC representative did not simply appear at Borsini’s door and talk his way into the house, contract in hand, but rather that the meeting was prearranged for the express purpose of executing the contract. Similarly, the plaintiffs complaint that Borsini had no opportunity to have a lawyer review the contract is unavailing, as the plaintiff has not alleged that he ever asked or desired to have the contract reviewed by an attorney.
Finally, the plaintiff points to the extent of its alleged damages as evidence of unconscionability. The plaintiff alleges that without the advertisement contracted for it had no hopes of attracting customers to the newest portion of its business and, as a result, it lost substantial amounts — if not all — of its potential customers. Recovery for the loss of profits is, however, precisely what is barred by Section 9 of the contract and such a limitation is not unconscionable.[6] Indeed, the plaintiffs argument simply lends credence to NIRC’s claim that Section 9 is essential to the operation of its business. If NIRC could indeed be held liable for all of the consequential damages associated with errors in Yellow Pages advertising, the cost of producing a Yellow Pages directory would be prohibitive. The extent of the plaintiffs damages was fully contemplated in Section 9 of the contract and did not result in any “unfair surprise” to the plaintiff.
The Form of the Contract
Alpha next argues that the form of the contract— with the applicable terms printed on the back of the contract — renders those terms unenforceable. The court does not agree. Directly to the left of the contract’s signature line, in all capital letters is the following sentence:
THE APPLICANT HAS READ AND UNDERSTANDS ALL OF THE TERMS AND CONDITIONS ON THE REVERSE SIDE AND AGREES TO BE BOUND BY SAID TERMS AND CONDITIONS. (Emphasis in original.)
If the plaintiff was indeed “surprised” by the contents of Section 9 of the contract, that surprise was not warranted. The plaintiff is not entitled to close his eyes to the clear and unambiguous terms of a contract and then assert that the existence of such terms resulted in an unfair surprise.
There are, of course, other considerations which might render the provisions of a form contract unenforceable.
Four characteristics stand out: (1) the use of fine print, which is difficult to read; (2) the failure to *571 distinguish important provisions, such as warranty disclaimers, from the mass of printed matter; (3) the complexity of the language used; and (4) the great length or sheer bulk of the printed materials.
Alperin and Chase, supra, §94 at 232-33 (citations omitted). In the present case, however, Section 9 can easily be characterized as the most distinguishable provision of the contract. Section 9 is the only provision on the one-page list of terms and conditions to be printed in all capital letters. The provision is clearly distinguishable from the remainder of the page and is readily apparent to even a casual reader. As a matter of form, the provision is clearly enforceable. Accordingly, summary judgment on Count II is appropriate.
Count I (The Contract Claim)
The defendants have also moved for partial summary judgment on Count I of the complaint arguing that — for reasons identical to those articulated above — the plaintiffs recovery must be limited to $1,332.00, the amount the plaintiff paid for the ads which were not placed in the Yellow Pages. The court agrees that the defendants are entitled to partial summary judgment on this issue.
The court need not end there. The defendants have not disputed the fact that the plaintiff paid for advertisements which were not placed in the Yellow Pages. Nor do they dispute the amount of the payments or claim that the payments have been refunded. As there are no genuine issues of material fact in dispute with respect to the plaintiffs breach of contract claim, the court grants partial summary judgment in the plaintiffs favor and against the defendants on the breach of contract count. The court further orders that the defendants pay damages in the amount of $1,332.00.
ORDER
For the reasons outlined above, the defendants’ motion for summary judgment on Count II of the complaint is ALLOWED. The defendants’ motion for partial summary judgment on Count I of the complaint is also ALLOWED. Summary judgment on the remainder of Count I is entered in favor of the plaintiff and against the defendants. The defendants are ORDERED to pay damages in the amount of $1,332.00.

 The plaintiff also makes certain allegations in his opposition to the motion to dismiss concerning NIRC’s failure to properly forward calls placed to Jacqueline Limousine’s old phone number. These allegations, however, are not properly related to the counts in the plaintiffs complaint and are, as such, not addressed here. Accordingly, nothing in this opinion should be construed as barring Alpha from bringing a separate action alleging negligence in connection with its call forwarding allegations.

 The parties made no separate arguments in their briefs concerning Joseph Keleher. However, at oral argument, Alpha One argued that, even if NIRC was entitled to summary judgment, Keleher was not entitled to summary judgment. Essentially, Alpha One’s argument is that Section 9 releases only NIRC in its corporate capacity and NIRC’s “affiliates,” but not Keleher individually. The Court concludes that the release covers employees of NIRC, such as Keleher. However, even if it did not, it is questionable whether Keleher can be liable in tort, as he did not commit the negligent act (failing to print Alpha One’s advertisement), or whether he can he be liable for breach of contract, as he is not a party to the contract between Alpha One and NIRC.

 For an excellent discussion of unconscionability, see Alperin and Chase, Unconscionability, 35 Massachusetts Practice Series, §§81-110.

 The plaintiff argued in its brief that, as the contract was signed in New Hampshire, New Hampshire law should govern the interpretation of the relevant provisions. At oral argument, however, the plaintiff essentially conceded this point and agreed that Massachusetts law would apply. Even if this were not the case, the court would not need to resolve the choice of law question, as there is no conflict between Massachusetts and New Hampshire law on this particular issue. Indeed, New Hampshire law is, if anything, more favorable to the defendant. The New Hampshire Supreme Court has already held an identical provision contained in a Yellow Pages contract to be enforceable. PK's Landscaping, Inc. v. N.E. Telephone Co., 128 N.H. 753 (1986).

 In its motion for summary judgment, NIRC cites to more than twenty different courts which have held this provision to be enforceable. Many of the cases are cited in Rozeboom v. Northwestern Bell Telephone Co., 358 N.W. 241, 247 (S.D. 1984) (Fosheim, J., dissenting). The court has been able to find only two cases which have held contrary, both of which have been criticized. Rozeboom, supra; Allen v. Michigan Bell Tel. Co., 18 Mich.App. 682, 171 N.W.2d 689 (1969), appeal denied, 383 Mich. 804 (1970).

 Indeed, in Pupillo, New England Telephone accidentally printed the phone number of the plaintiffs main competitor in the plaintiffs advertisement. The resulting damages were, as might be expected, considerable. Even so, the court did not find the enforcement of the limitation of damages unconscionable.