Troy, J.
Plaintiff David J. Schwartz has moved for an assessment of damages after defendant Scott E. Levensailor defaulted on a promissory note he executed on November 17, 1999 whereby defendant promised to pay plaintiff the principal sum of $ 16,600.00 together with interest at an annual rate of 28.274% in eight equal annual payments of $5,434.91. In accordance with the criminal usury statute, G.L.c. 271, §49(d), on or about November 17, 1999, plaintiff also sent a letter to the Attorney’s General Office indicating that he intended to charge over 20% on a loan. Defendant made one payment of $5,434.91 before defaulting on the note by failing to make a second installment payment on January 31, 2001 and causing the collateral (U.S. Army Voluntary Separation Incentive Payments) securing the loan to lapse. Because defendant defaulted on the $16,600.00 loan, the plaintiff now seeks a default judgment in the amount of $43,941.24 plus $1,500.00 in attorneys fees and costs.
An initial hearing on plaintiffs motion for assessment of damages was attended only by plaintiffs counsel.[1] A second hearing was held to address the following issues: (1) whether the notice given by the plaintiff to the Attorney General’s Office satisfies the statutory requirements of G.L.c. 271, §49(b); and (2) if the notice is deemed by the Attorney General’s Office to satisfy the requirements of G.L.c. 271, §49(b), whether the promissory note is unconscionable such that it should be reformed. Notice of the second hearing (“hearing”) was sent to the parties, to the Attorney General for the Commonwealth of Massachusetts, and to the Chiefs of the Public Protection Bureau and Criminal Bureau of the Massachusetts Attorney General’s Office.
DISCUSSION
A. G.L.c. 271, §49(d)The “Criminal Usury Statute”
Under the provisions of G.L.c. 271, §49(a), the criminal usury statute, a person may not in exchange for a loan of money charge “interest and expenses the aggregate of which exceeds an amount greater than twenty per centum per annum upon the sum loaned.” The statute, however, does not apply to a person who notifies the attorney general of his intent to engage in a transaction proscribed under section (a) and providing that such person maintains records of any such transaction. G.L.c. 271, §49(d).[2] However, “(t]o be relieved of liability under G.L.c. 271, §49(d), the requisite notification must be on file with the Attorney General when the loan proceeds are distributed.” Blunsden v. Marks, 13 Mass. L. Rptr. 318, 2001 WL 771184, fn. 3 (Garsh, J.) (2001) (emphasis added). See Levites v. Chipman, 30 Mass.App.Ct. 356, 362 (1991) (notice on file at time proceeds were distributed); Hakim Enterprises, Inc. v. R. Dennis Reinhardt, 30 Mass.App.Ct. 911, 911 (1991) (compliance with G.L.c. 271, §49(d) was shown where lender mailed notice to Attorney General prior to execution of note and loan agreement and funds were not disbursed until after Attorney General received notice); Albano v. City National Bank of Connecticut, 11 Mass.App.Ct. 973, 973 (1981) (relevant notices were on file with the Attorney General prior to the times when the net proceeds of the loans were disbursed from escrow).
The usury law “is designed to protect the necessitous debtor from outrageous demands by lenders.” Begelfer v. Najarian, 381 Mass. 177, 182 (1980). If a lender fails to give notice to the Attorney General, the statute empowers the court “to utilize its full range of equitable powers, including cancellation, in order to reach an appropriate result in each case.” Id. at 18.7. Moreover, ”[t]he appropriate remedy in any particular *178 case is arrived by balancing a number of factors including the importance of the public policy against usury, whether a refusal to enforce the term will further that policy, the gravity of the misconduct involved, the materiality of the provision to the rest of the contract, and the impact of the remedy on the parties’ rights and duties.” Id. at 189.
(a) Notice to Attorney General.
In the instant case, the record shows that the plaintiff mailed a notice to the Attorney General on November 17, 1999, advising the Attorney General of plaintiffs intent to loan money at a rate higher than twenty-percent as proscribed by G.L.c. 271, §49. Additionally, the record indicates that the Promissory Note (“Note”) was also executed on November 17,1999, and that a check for $16,600 was disbursed to the defendant on the same day. The plaintiff has not demonstrated that the notice was “on file” with the Attorney General’s Office before the funds were disbursed. In fact, it is apparent from the record that all transactions took place on November 17, 1999. Accordingly, this Court finds that “notice” was not timely made in accordance with the statute and the Note is .not immune from attack as “usurious.”[3]
(b) Terms of the Promissory Note.
The terms of the Note signed by the defendant provides that the principal sum is $16,600, including prepaid fees,[4] and that the effective annual interest rate is 28.274%. According to the terms of the Note, the loan is to be repaid in eight equal annual payments of $5,434.91, each payable on January 31 of the years 2000 through 2007. The Note is accelerated if an “event of default” occurs,[5] such as when the borrower fails to pay any amounts payable under the Note when due. If such an event occurs, “interest shall accrue on the outstanding balance of this Note at the annual rate of ten percent (10%) per annum, provided however that at all times following January 31, 2007 that any potion of this Note remains unpaid, interest shall accrue on the outstanding balance of this Note at the annual rate of forty percent (40%) per annum.” Additionally, a 5% late charge is imposed on any amount not paid within 10 days of the due date.
As defined by G.L.c. 271, §49, “the amount to be paid upon any loan for interest or expenses shall include all sums paid or to be paid by or on behalf of the borrower for interest, brokerage, recording fees, commissions, services, extension of loan, forbearance to enforce payment, and all other sums charged against or paid or to be paid by the borrower for making or securing directly or indirectly the loan ...” In this case, the Note provides for an interest rate of 28.274% which is above the statutory maximum of 20%. Additionally, the plaintiff seeks an additional 5%, or 33.27% interest on each installment if the payment is late. Moreover, if the loan is accelerated, an additional 10% is charged on the balance due, or 43.27%; and if an outstanding balance exists after 2007, defendant can expect to pay an additional 40% or 83.27% on any balance due.
The Court finds that the Note’s total interest, charges and fees, exceed 20% in violation of G.L.c. 271, §49, and will not enforce the terms of Note as requested by the plaintiff. Further, the Court will not declare the Note void, but will exercise its equitable power to determine the amount due to plaintiff on the Note. Accordingly, the interest rate on the Note is reduced to twenty percent (20%), the maximum permissible rate allowed by the statute. Begelfer v. Najarian, 381 Mass. 177, 187 (1980); Beach Associates, Inc. v. Fauser, 9 Mass.App.Ct. 386, 388-89, 393-94 (1980) (within the discretion of the judge to void, rescind, refund, credit any excessive interest, reform the contract, or to provide any other relief consistent with equitable principles).
B. Unconscionability
“The doctrine of unconscionability has long been recognized by common law courts in this country and in England.” Waters v. Min Ltd., 412 Mass. 64, 66 (1992). "[A] contract was determined unenforceable because it was unconscionable when ‘the sum total of its provisions drives too hard a bargain for a court of conscience to assist.’ Campbell Soup Co. v. Wentz, 172 F.2d 80, 84 (3rd Cir. 1948).” Waters, supra at 66, citing Covich v. Chambersh, 8 Mass.App.Ct. 740, 750 n. 13 (1979).
“The doctrine of unconscionability has also been codified in the Uniform Commercial Code (code), G.L.c. 106, §2-302 (1990 ed.), and, by analogy, it has been applied in situations outside the ambit of the code.” Waters, supra at 67 (citations omitted). See also G.L.c. 106, §2-302.[6] “Unconscionability must be determined on a case-by-case basis, with particular attention to whether the challenged provision could result in oppression and unfair surprise to the disadvantaged party and not to allocation of risk because of ‘superior bargaining power.’ ” Waters, supra at 67, citing Zapatha v. Dairy Mart, Inc., 381 Mass. 284, 292-93 (1980). Furthermore, “(i]f the sum total of the provisions of a contract drive too hard a bargain, a court of conscience will not assist its enforcement.” Waters, supra at 68, citing Campbell Soup Co. v. Wentz, 172 F.2d 80, 84 (3rd Cir. 1948). "The issue is one of law for the court, and the test is to be made as of the time the contract was made.” Zapatha v. Dairy Mart, Inc., 381 Mss. 284, 291 (1980), citing G.L.c. 106, §2-302.
In this case, the plaintiff seeks to recover a judgment of $43,941.24. This amount includes seven unpaid installments of $5,434.91 totaling $38,044.37, plus a 10% annual interest of $3,804.44, and a 5% late fee of $2,092.43. Additionally, the plaintiff seeks to recover $1,500 in attorneys fees.
(a) Acceleration clause. “An acceleration clause advancing the maturity of the principal upon a breach of a mortgage note at the option of the holder is a common provision and has been held legal and bind *179 ing in this Commonwealth.” A-Z Servicenter, Inc. v. Segall, 334 Mass. 672, 676 (1956). “This would also be true as to interest if the acceleration extended no further than to include the interest actually due at the time of the breach. ” Id. However, “(w]hen a note is given for a fixed sum representing principal and interest for the period of the note, the clause accelerating the maturity of the debt will not be enforced as to future interest... To allow a charge for unearned interest in the attending circumstances would be unconscionable." Id. at 677 (emphasis added). See also Stilian v. GTC Corp., 17 Mass.App.Ct. 953 (1992).
The defendant in this case defaulted on the loan on January 31, 2001 when he failed to make an installment payment in accordance with the terms of the Note. Demand for payment was made on July 16, 2001; the complaint was filed in this court on December 21,2001. The plaintiff seeks to accelerate payment of seven unpaid installments totaling $38,044.37, most of which includes unearned interest. The defendant paid one installment of $5,434.91 on January 2000; $2075.00 was applied towards the principal. Thus, the amount of unpaid principal is $14,525.[7] The court agrees that the plaintiff may seek full payment of the unpaid principal. See A-Z Servicenter, Inc. v. Segall, 334 Mass. 672, 676 (1956). However, the court disagrees with the plaintiff that he is entitled to $23,519.37 in unpaid and unearned interest. See A-Z Servicenter, Inc., supra at 676 (“The amount attributable to interest bears no rational relation to the balance remaining unpaid on the note”).
In accelerating the amount owed, plaintiff also asks that the Court allow an additional 10% interest on the outstanding balance and a 5% late charge. In effect, this would raise the interest rate on the Note, including charges and fees, from 28.274% to 43.274% per year. According to the Federal Reserve Statistical Release H. 15 (Release date: November 22, 1999), the “bankprime loan” rate on November 17, 1999 was 8.50%; this was the same date that the Note was executed. The interest rate charged by the plaintiff, 28.274%, is grossly excessive when compared to the market rate in 1999. Allowing the plaintiff to now receive 43.274% on his loan in interest and fees is unconscionable. Thus, the acceleration provision which is oppressive, unconscionable, and unfair, will not be enforced.[8]
(b) Attorneys fees. The Court finds that the attorneys fees and costs in the amount of $1,500.00 requested by plaintiffs counsel is fair and reasonable.
C. Assessment of Damages
“It has long been the rule in this Commonwealth that, absent any express agreement to the contrary, partial payments on an interest bearing debt are applied first to the interest due, with any excess payment to be applied to reduce the principal debt.. . These cases have unequivocally held that subsequent interest is computed on the reduced principal balance.” Plasko v. Orser, 373 Mass. 40, 42-43 (1977) (citations omitted).
From January 31, 2000 through December 2001 when the plaintiff filed his complaint, approximately twenty-three months of interest had accrued on the loan. See Plasko v. Orser, 373 Mass. 40, 43 (1977) (“Interest is compensation for the deprivation of use of principal”). On January 31, 2000, the defendant made one installment payment of $5434.91. The sum of $2,075.00 was allocated to the principal and $3359.91 to interest.[9] Since the interest on the first installment should have been $3320.00 ($16,600.00 x 20%), the defendant overpaid the plaintiff $39.91 in interest. This amount will therefore be credited towards the total amount owed to the plaintiff.
The principal balance after the payment of the first installment was $14,525.00 and the interest due on the second installment which was due on January 31, 2001 was $2905.00 ($14,525.00 x 20%). Accordingly, the Court will award the plaintiff $ 14,525.00 in unpaid principal and $2905.00 in unpaid interest due on the second installment from February 1, 2000 through January 31, 2001.
Further, there being no enforceable interest rate as of the date of the filing of the complaint, December 21, 2001, interest on the judgment will accrue at a rate of 12% in accordance with G.L.c. 231, §6C. See Stilian v. GTC Corp., 17 Mass.App.Ct. 953, 954 (1983).
ORDER
For the reasons stated above, it is hereby ORDERED that the plaintiff s motion for assessment of damages is ALLOWED. The plaintiff is awarded $17,390.09[10] in unpaid interest and principal owed through December 20, 2001 and $1,500.00 in attorneys fees. Interest on the judgment will accrue at a rate of 12% pursuant to G.L.c. 231, §6C, beginning December 21, 2001 when the complaint was filed.

The defendant has not filed an opposition to plaintiffs motion for assessment of damages. Notwithstanding this, the court must insure that the damages assessed are proper.

The statute does not require that the notice contain information regarding the borrower, prepaid fees, the interest rate, late fees, default fees, or acceleration fees. This lack of virtually any information about the terms of a transaction precludes any oversight by the Attorney General’s Office. In enacting G.L.c. 271, §49(d), one would assume that the legislature intended that the Attorney General’s Office would actively monitor such loans to protect “necessitous borrowers” from sinking into debt and even losing their homes. However, the Assistant Attorney General present at the assessment of damages hearing indicated that notices filed pursuant to G.L.c. 271, §49(d) are “filed” away and are not carefully reviewed by anyone.

Even if the notice were timely filed with the Attorney General’s Office, the court would refuse to enforce it because its terms are unconscionable. See infra.

The Promissory Note states that the amount of the principal as $16,600, “which includes prepaid fees.” It is not clearly indicated on the Promissory Note what the “prepaid fee” is, nor what it includes. The check which was delivered to the defendant, however, was for $16,600.

The “Loan and Collateral Security Agreement,” at Section 11 Events of Default, defines ten circumstances or events which if they occur, constitute a default on the loan.

Uniform Commercial Code §2-302 states:
If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

The plaintiff acknowledges that this is the amount of the unpaid principal in his “Memorandum in Reply to Procedural Order-Notice of Hearing.”

That the debtor was “necessitous” is evidenced not only by the note’s inordinately high interest rate, but also by the fact that he borrowed $16,600.00 from plaintiff on November 17, 1999 and his first payment of $5,434.91 was due just ten weeks later, on January 31, 2000.

It is important to note that the Promissory Note does not provide a payment schedule breaking down the amount of principal and interest credited with each monthly installment. Thus, the court has applied the principles outlined in Plasko, supra at 42-43, in calculating interest, by reducing an equal amount of principal each year from the balance due. In acknowledging that the amount of principal due on January 31, 2001 was $14,525.00, the plaintiff also seems to have applied $2,075.00 towards reducing the principal after the first installment was paid on January 2000. Two-thousand seventy-five dollars ($2,075.00) is Vs of the $16,600.00 principal sum borrowed by the defendant.

$14,525.00 (principal owed) + 2905.00 (interest on second installment) — $39.91 (credit for overpayment of interest on first installment) = $17,390.09 (total owed).